Christine L. STEFANSKI and Matthew Stefanski, Plaintiffs,

v.

R.A. ZEHETNER & ASSOCIATES, INC., d/b/a Bell Ambulance, Rick A. Zehetner, James P. Lombardo, Mark Deguire, Joseph A. Wehner, Wayne Jurecki, Defendants,

and

American Family Mutual Insurance Co., Intervenor-defendant.

Civ. A. No. 93–C–0924.

United States District Court, E.D. Wisconsin.

June 17, 1994.

Bradden C. Backer, Godfrey & Kahn, Theodore J. Poulos, Poulos, Sengstock & Budny, Milwaukee, WI, for plaintiffs.

Larry J. Britton, Vlasak, Rosenbaum & Britton, James E. Aschenbrener, Aschenbrener, Arnold & Artery, Milwaukee, WI, for defendant Joseph Wehner.

Terry E. Johnson, Dan J. Gendreau, Peterson, Johnson & Murray, Milwaukee, WI, for intervenor defendant American Family.

John A. Busch, Eric E. Hobbs, Eric H. Rumbaugh, Michael Best & Friedrich, Milwaukee, WI, for all other defendants.

## DECISION AND ORDER

REYNOLDS, District Judge.

In this action, filed August 26, 1993, plaintiff Christine Stefanski ("Stefanski"), formerly a receptionist for defendant Bell Ambulance ("Bell"), claims that her supervisor at Bell, defendant Joseph Wehner ("Wehner"), sexually harassed her, and that other Bell employees both failed to remedy the harassment and retaliated against her for complaining about it, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Stefanski also brings claims for conspiracy under the Ku Klux Klan Act, 42 U.S.C. § 1985(3), as well as state claims for conspiracy, assault, battery, and failure to maintain a safe workplace. Stefanski's husband, plaintiff Matthew Stefanski, seeks damages for loss of consortium.

On October 6, 1993, defendants other than Wehner filed a motion to dismiss all claims except the Title VII claim against Bell. For reasons set forth below, the motion will be granted in part and denied in part.

### I. Factual Allegations

Stefanski's complaint alleges the following. On December 30, 1992, defendants Wehner, Rick Zehetner ("Zehetner"), James Lombardo ("Lombardo"), and Wayne Jurecki ("Jurecki"), all Bell employees, left Bell's premises, visited one or more taverns and consumed alcoholic beverages. After they returned several hours later, Wehner, who had become intoxicated, touched Stefanski's breast, "attempt[ed] to staple" her breast, "compar[ed] his sexual prowess to" that of Stefanski's husband, offered "to provide her with oral sexual services," demanded that Stefanski "provide him with sexual favors," sprayed the contents of a fire extinguisher at Stefanski's waist, and sexually assaulted another Bell employee, all of which was unwelcome. (Compl. ¶¶ 24–26.)

Stefanski complained about Wehner's behavior to supervisors at Bell and also filed a criminal complaint against him. As a result of his behavior, Wehner was suspended without pay for three weeks, though Lombardo, who was another of Stefanski's supervisors, had given her the impression that Wehner would not be returning to work. (*Id.* ¶ 29.) When he did return, Lombardo, Mark DeGuire ("DeGuire"), and Zehetner repeatedly requested that Stefanski meet with him so that he could apologize to her directly, but she declined to do so. Lombardo and the others "left [Stefanski] with the impression that they were angry with her" because of her refusal to meet Wehner. (*Id.* ¶ 30.) Further, Lombardo required Stefanski "to

have ongoing contact with" Wehner, though she wished to avoid him. (*Id.* at 32.)

On June 24, 1993, a month after pleading no contest to a charge of fourth degree sexual assault, Wehner was sentenced to nine months imprisonment and two years probation, with the sentence of imprisonment suspended. Despite the plea and sentence, Wehner retained his supervisory status at Bell. (Compl. ¶ 34.)

## II. Analysis

■ A complaint should not be dismissed for failure to state a claim unless it is clear that the plaintiff would not be entitled to relief even if the factual allegations were proven. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Accordingly, this court must accept as true the plaintiff's factual allegations and must draw all reasonable inferences from the pleadings in favor of the plaintiff. *Gillman v. Burlington N. R.R.,* 878 F.2d 1020, 1022 (7th Cir.1989).

### A. Title VII Claims Against Individual Defendants

Defendants move to dismiss Stefanski's Title VII claims against the individual defendants on the ground that employees are not subject to liability under the statute in their "individual" capacities. The statute provides that "it shall be an unlawful employment practice for an employer" to discriminate on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2, and permits a person aggrieved by such discrimination to bring a civil action against the "employer." 42 U.S.C. § 2000e–5(b). "Employer" is defined, however, to mean "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person." 42 U.S.C. § 2000e(b). Stefanski argues that the individual defendants, as employees of Bell, are by definition its agents, and thus are liable as "employers."

All but one of the courts of appeals that have addressed this question, however, have

concluded that employees may be sued and held liable only in their "official capacities" as agents of the employer, not in their individual capacities. *Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993); *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587–588 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991); *Harvey v. Blake,* 913 F.2d 226, 227–28 (5th Cir.1990); *York v. Tennessee Crushed Stone Ass'n,* 684 F.2d 360, 362 (6th Cir.1982).[1] This conclusion finds support in Title VII's remedial scheme. Prior to the effective date of the Civil Rights Act of 1991, compensatory damages were unavailable; plaintiffs were entitled only to reinstatement, back pay, or other "equitable relief," which could not have been enforced against an employee in his or her individual capacity. Though this restriction was removed in 1991, the amount of compensatory damages now available depends on how many employees the "respondent" has, 42 U.S.C. § 1981a(b)(3), and an employee in his or her individual capacity does not have any.

Further, the majority view does not render meaningless the phrase "and any agent of such a person" in the statute's definition of "employer." If the phrase is construed to permit suits against employees in their official capacities, it ensures that, in accordance with the common-law rule, the employer will be held liable for the acts of its agents. *See Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986) (Title VII's definition of "employer" to include "agents" implies that the employer's liability should be based on common-law principles of agency).

This purpose, indeed, is reflected even in the decision of the Fourth Circuit, *Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir. 1989), *vacated in part on other grounds on rehearing,* 900 F.2d 27 (1990), which alone holds that employees may be held individually liable under Title VII. The decision limits its holding to "supervisory" employees "exer-

---

**1.** The Seventh Circuit in *Huebschen v. Dept. of Health and Social Services,* 716 F.2d 1167, 1170 (7th Cir.1983), assumed, but does not appear to have decided, that a Title VII claim could not be

brought against an employee. The issue was not presented in that case because the plaintiff had agreed that the defendant employee did not fall within Title VII's definition of "employer."

cis[ing] significant control over the plaintiff's hiring, firing or conditions of employment." *Id.* This limitation makes little sense if the holding is based on the statute's definition of employer, because all employees, not just supervisors, are agents of the employer, and any employee can effectively alter the conditions of another's employment. But the limitation does make sense under the majority view that the reference to "agent" in the definition of employer is intended only to incorporate principles of agency, because one of those principles is that the employer generally is liable only for acts within or related to the agent's authority, and only "supervisory" employees have authority (whether actual or apparent) over the working conditions of other employees. *See, e.g., Juarez v. Ameritech Mobile Comm. Inc.,* 957 F.2d 317, 321 (7th Cir.1992).

The court therefore concludes that the individual defendants may be sued under Title VII only in their official capacities as agents of Bell. Thus, defendants' motion to dismiss will be granted as to Stefanski's Title VII claims against the individual defendants in their individual capacities.

### B. Title VII Claims of Quid Pro Quo Sexual Harassment and Retaliation

Stefanski's complaint sets forth four causes of action under Title VII: Qui Pro Quo Sexual Harassment; Creation of a Hostile Work Environment; Failure to Remedy Acts of Sexual Harassment; and Unlawful Retaliation. Defendants contend that the complaint's allegations do not support the first and fourth of these claims. To state a claim of quid pro quo sexual harassment, the plaintiff must show that "submission to sexual demands [was] made a condition of tangible employment benefits." *Dockter v. Rudolf Wolff Futures, Inc.,* 913 F.2d 456, 461 (7th Cir.1990). To state a claim for retaliation, the plaintiff must show that as a result of engaging in an activity protected under Title VII, "she suffered an adverse action by her employer." *Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1313 (7th Cir.1989); 42 U.S.C. § 2000e–3(a).

The complaint alleges that the terms and conditions of Stefanski's employment were "adversely affected" both as a result of Stefanski's refusal to comply with Wehner's requests (the quid pro quo claim) and as a result of her filing a complaint against him (the retaliation claim). (Compl. ¶¶ 38, 52.) Defendants contend, however, that these conclusory allegations fail to state a claim because they are unsupported by factual allegations describing how the terms and conditions of her employment were adversely affected. The court disagrees. The complaint alleges three specific actions which Stefanski claims amounted to adverse employment action. It alleges, first, that Wehner sprayed her with a fire extinguisher (Compl. ¶ 24(E)); second, that other employees repeatedly asked Stefanski to meet with Wehner so that he could apologize, notwithstanding her objections to such a meeting (Compl. ¶ 30); and, third, that Bell forced Stefanski to work with Wehner following his reinstatement, despite her wish to avoid contact with him. (Compl. ¶ 32.)

Thus, unlike the claims set forth in *Perkins v. Silverstein,* 939 F.2d 463, 468 (7th Cir.1991), Stefanski's claims of quid pro quo sexual harassment and retaliation are not purely conclusory. (Whether the actions complained of in support of these claims actually constitute "adverse employment action" is another question, but defendants have not raised it, and so the court will not now address it.) The motion to dismiss the quid pro quo and retaliation claims will therefore be denied.

### C. State Tort Claims: Whether Barred by Workers Compensation Act

Defendants contend that Stefanski's state claims for assault, battery, conspiracy, and failure to maintain a safe workplace, and her husband's claim for loss of consortium, are barred by the Wisconsin Workers Compensation Act ("WCA"), which provides that it affords the "exclusive remedy" for workplace injuries. Wis.Stat. § 102.03(2). Stefanski insists, however, that because defendants, in a separate action before the state Worker's Compensation Division, are disputing her right to recover under the WCA, they should not be entitled to rely upon the statute's exclusivity provision in this action.

Defendants respond that their position before the Compensation Division is not that Stefanski's alleged injury is not covered by the WCA, but that she has not in fact suffered any injury. (Nov. 17, 1993 Pl.Br., Ex. 2.) The court agrees that taking this position does not estop defendants from raising the WCA's exclusivity provision as a defense in this case.

Stefanski next contends that her claims fall within an exception to the exclusivity provision, which provides: "This section does not limit the right of an employee to bring action against any coemploye for an assault intended to cause bodily harm." Wis. Stat. § 102.03(2). This exception, Stefanski says, preserves not only her claim against Wehner, but also her claims against the other defendants, because these claims, she says, are "inextricably entwined" with Wehner's assault. To the extent the Stefanskis seek to recover from Wehner based on his alleged "attempt to staple Ms. Stefanski's breast," the court agrees that the exception to the exclusivity provision applies; contrary to defendants' assertion, the allegation does imply an intent on Wehner's part to cause bodily harm. Thus, defendants' motion to dismiss the assault, battery, and loss-of-consortium claims against Wehner will be denied.

But Stefanski's other state claims do not fall within the exclusivity provision, either because they are not against a coemployee (the claims against Bell) or because they are not claims for an assault intended to cause bodily harm (the claims against Lombardo, Zehetner, Jurecki, and DeGuire for failure to maintain a safe workplace, conspiracy, and loss of consortium). As to these claims, therefore, defendants' motion to dismiss will be granted.[2]

2. Because the state claims against defendants other than Wehner will be dismissed for this reason, the court need not consider defendants' argument that the other defendants are not vicariously liable for Wehner's actions.

3. Stefanski also alleges a conspiracy in violation of state law, but this claim, as noted above, is barred by the exclusivity provision of the WCA.

### D. Conspiracy Claim under 42 U.S.C. § 1985(3)

Stefanski claims that defendants' discriminatory actions were taken pursuant to a conspiracy, in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1985(3).[3] Defendants contend that the complaint fails to state a claim for conspiracy because it does not allege facts from which an agreement among the defendants may be inferred. The court concludes, however, that the allegations of specific, coordinated action among the defendants (Compl. ¶¶ 23, 30, 32) supports the inference that they acted pursuant to an agreement. The motion to dismiss the federal conspiracy claim will therefore be denied.

### III. Conclusion

For the foregoing reasons, the court will dismiss the following claims: the Title VII claims against the individual defendants in their individual capacities and the state claims against all defendants except Wehner. Thus the following claims remain: all Title VII claims against Bell and against the individual defendants in their official capacities; the conspiracy claim under 42 U.S.C. § 1985(3) against all defendants; and all state claims against Wehner in his individual capacity.

**IT IS THEREFORE ORDERED** that defendants' October 6, 1993 motion to dismiss is GRANTED with respect to the following claims and such claims are DISMISSED: the Title VII claims (First through Fourth Causes of Action) against the individual defendants in their individual capacities and the state claims (Fifth through Tenth Causes of Action) against all defendants except Wehner.

**IT IS FURTHER ORDERED** that defendants' October 6, 1993 motion to dismiss is DENIED with respect to the following claims: all Title VII claims (First through

The parties have not specifically addressed the question of whether the WCA also bars the federal conspiracy claim, and the court will assume that it does not. *See McClary v. O'Hare*, 786 F.2d 83, 85 (2d Cir.1986) (holding that "state statute's exclusivity provision [does not] bar a federal civil rights action").

Fourth Causes of Action) against Bell and against the individual defendants in their official capacities; the conspiracy claim under 42 U.S.C. § 1985(3) (Ninth Cause of Action) against all defendants; and all state claims against Wehner (Fifth, Sixth, Seventh, Ninth, and Tenth Causes of Action) in his individual capacity.