**Kim GASTINEAU, Plaintiff,**

**v.**

**FLEET MORTGAGE CORP., Katrina
Johnson, Julie Trimble, and Dan
Negele, Defendants.**

**No. IP 94–869 C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Sept. 30, 1994.

Robert C. Bruner, Clark Quinn Moses &
Clark, Indianapolis, IN, for plaintiff.

Robert L. McLaughlin, Derek D. Murphy,
Wooden McLaughlin & Sterner, Indianapolis,
IN, for defendants.

### ENTRY

BARKER, Chief Judge.

This matter is before the Court on defendants Julie Trimble, Dan Negele and Katrina Johnson's motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

### I.  FACTS

For purposes of the Defendants' motion to dismiss, the facts alleged in the Complaint are undisputed.  In October, 1991, Fleet Mortgage Corporation ("Fleet") hired Kim Gastineau as a loan officer.  Gastineau worked in Fleet's South East Street Branch in Indianapolis, Indiana.

At that time, Gastineau worked with Katrina Johnson, who was a loan processor.  Apparently (for it is not clear from the few facts appearing in the Complaint), Johnson "sexually harassed" Gastineau for most, if not all, the fourteen months Gastineau worked for Fleet. (Complaint, ¶ 2).  The Complaint also asserts that Gastineau's supervisors—Branch Manager Julie Trimble and Regional Vice President Dan Negele—knew about Johnson's conduct.  Rather than preventing its reoccurrence, however, Trimble recommended to Negele that Gastineau be fired.  Ultimately, in November 1992, Negele fired Gastineau.

Plaintiff initiated this suit on May 27, 1994, and his complaint alleges numerous violations.  Count I seeks to impose individual liability on Johnson.  It alleges that she sexually harassed Gastineau in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1981 and Supp.1993).  Counts II and III, by contrast, are aimed at Fleet.  They allege respectively that Fleet failed to remedy acts of sexual harassment and that it retaliated unlawfully against Gastineau when he complained about the harassment.

### II.  DISCUSSION

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *Triad Assocs., Inc. v. Chicago Housing Authority,* 892 F.2d 583, 586 (7th Cir.1989), *cert.*

*denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). This Court must accept as true all the Plaintiff's factual allegations. *Midwest Grinding Company v. Spitz,* 976 F.2d 1016, 1019 (7th Cir.1992). Although a plaintiff need not set out in detail all the facts upon which a claim is based, she must allege sufficient facts to outline the cause of action. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985).

In this case Johnson, Trimble and Negele move to dismiss Gastineau's claims to the extent that those claims seek to hold them individually liable. They contend that there is no personal liability under Title VII because that statute imposes liability only on employers. The Court agrees.[1]

Title VII gives an employee the right to sue his "employer" for discrimination. 42 U.S.C. §§ 2000e–2, –5(b). "Employer" is defined as a person engaged in industry who has fifteen or more employees "and any agent of such a person." § 2000e(b). The issue here, therefore, is whether Congress inserted this agency language in order to subject co-workers and supervisors to personal liability as "employers" under the statute.

The Seventh Circuit has not explicitly indicated whether supervisors are employers within the meaning of Title VII. *See Gaddy v. Abex Corp.,* 884 F.2d 312, 318–319 (7th Cir.1989) (upholding liability for supervisor without commenting on whether liability was in official or personal capacity). Other circuits have taken conflicting views. For example, in *Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir.1989), vacated in part, 900 F.2d 27 (4th Cir.1990), the Fourth Circuit concluded that the agency language used in Title VII's definition of employer indicates Congress' intent to impose personal liability on individuals who serve in supervisory positions and exercise "significant control" over hiring, firing and conditions of employment.

Other circuits, relying on the Ninth Circuit case of *Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 587–88 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994), have taken the opposite view. In *Miller,* the court read the agency language of Title VII as indicating an intent to incorporate respondeat superior rather than to impose personal liability on supervisors. *Accord Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510–11 (4th Cir.1994) (construing same language in ADEA); *Grant v. Lone Star Co.,* 21 F.3d 649, 652–53 (5th Cir.1994); *Smith v. St. Bernards Regional Medical Center,* 19 F.3d 1254, 1255 (8th Cir. 1994).

Finally, some circuits have allowed suits against individuals, but only in their "official" capacities. *Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) ("the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly"). However, because these official capacity suits do not provide relief from the individual in his or her personal capacity, they simply "operate[ ] as an alternative means of naming the individual's employer." *Redpath v. City of Overland Park,* 857 F.Supp. 1448, 1455–56 (D.Kan.1994).

District courts in this circuit are also divided. In *Griffith v. Keystone Steel & Wire Co.,* 858 F.Supp. 802, 805 (C.D.Ill.1994), Judge Mihm relied on the plain meaning of the phrase "and any agent of such a person" in finding that individual employees could be liable under Title VII. Similarly, Chief Judge Moran determined that individuals working as agents of larger institutions could be held personally liable in *Vakharia v. Swedish Covenant Hospital,* 824 F.Supp. 769, 785–86 (N.D.Ill.1993). In that case, the court reasoned that the dual purpose of Title VII,

---

1. The Court notes that it is not clear from the face of the Complaint that Gastineau is seeking relief from Trimble and Negele as individuals. Count I is aimed at Johnson, while Counts II and III are aimed at Fleet. Nevertheless, the caption names Trimble and Negele as defendants (although it does not say whether they are defen-

dants as individuals or merely as agents of Fleet in their official capacity). Moreover, both sides have briefed this matter as if Trimble and Negele were to be individually liable. Therefore, the Court will consider this motion as if Defendants had been named in their individual capacities.

to compensate victims and to deter future discrimination, required that supervisory employees be personally accountable for their discriminatory acts. *Id.* at 785; *accord Raiser v. O'Shaughnessy,* 830 F.Supp. 1134, 1137 (N.D.Ill.1993); *EEOC v. AIC Security Investigations, Ltd.,* No. 92 C 7330, 1993 WL 427454 (N.D.Ill. Oct. 21, 1993) (construing similar language in Americans with Disabilities Act).

The clear trend within this circuit, however, is to impose liability only on the employer. For example, in *Pacourek v. Inland Steel Co., Inc.,* 858 F.Supp. 1393 (N.D.Ill. 1994), Judge Alesia noted that the 1991 amendments to the Act set caps on the damages available that are based solely on the number of employees the defendant employed. Because supervisors do not "have" employees, the court concluded that Title VII "structurally disfavors supervisor liability." *Id.* at 1406. Judge Lozano reached the same conclusion in *Johnson v. Northern Ind. Public Service Co.,* 844 F.Supp. 466 (N.D.Ind. 1994). In that case the court found that Congress used the word "agent" in the definition of "employer" in order to incorporate respondeat superior into the statute. The court also concluded that exempting supervisors from individual liability would not lead to greater discrimination in the work place:

> While supervisors may be exempt from individual liability, their employer still can be held liable under Title VII. It may be presumed that employers do not wish to employ supervisors who discriminate and subject their employers to liability. Thus, supervisors hardly will be encouraged to violate Title VII by this ruling.

*Id.* at 469; *accord Hennessy v. Penril Datacom—Networks, Inc.,* 864 F.Supp. 759 (N.D.Ill.1994); *Stefanski v. R.A. Zehetner & Assocs., Inc.,* 855 F.Supp. 1030 (E.D.Wis. 1994); *Vodde v. Ind. Mich. Power Co.,* 852 F.Supp. 676, 679 (N.D.Ind.1994); *Dirksen v. City of Springfield,* 842 F.Supp. 1117, 1122 (C.D.Ill.1994).

Although the issue remains deeply divided in district courts across the land, the Court is persuaded that the statutory scheme of Title VII indicates Congress' intent to impose liability only on employers. Allowing personal liability to exist against individual employees is inconsistent with Title VII's remedial scheme, which extends coverage only to employers of 15 or more employees. Concluded the court in *Miller:*

> If Congress decided to protect small entities [with fewer than fifteen employees and] with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.

*Miller,* 991 F.2d at 587. Moreover, the recent amendments to Title VII under the Civil Rights Act of 1991 do not change our reasoning. The amendments *inter alia* limit damages to $50,000 for employers of fifteen to 100 employees; to $100,000 for employers of 101–200; to $200,000 for employers of 201–500; and to $300,000 for employers of more than 500. 42 U.S.C. § 1981a(b)(3)(A)–(D). Nowhere in the amendments are these caps scaled to the wealth or culpability of individuals. Nor would it be rational to base the liability exposure of an individual supervisor solely on the size of his or her employer. In short, the Court believes that the small employer exemption and damage caps suggest only one thing: that Congress intended one award from one source based on that source's ability to pay.

Our conclusion is bolstered by the fact that Congress could have easily provided for individual liability simply by substituting the word "person" for the word "employer" in § 2000e–2.[2] Indeed, Congress has proscribed conduct by "persons" in other related statutory schemes. *See, e.g.,* 42 U.S.C. §§ 1981, 1983, 1985, 1986. And our reading does not render meaningless the phrase "and any agent of such a person" in the statute's definition of "employer." Rather, the Court believes that Congress included that language to ensure, unlike sections 1981 and 1983, that employers sued pursuant to Title VII would face derivative liability for the discriminatory acts of their employees. *See*

---

**2.** Section 2000e–2 reads in relevant part:
It shall be an unlawful employment practice for an employer ... to discriminate against

any individual ... because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a) (1981)

*Miller,* 991 F.2d at 587 ·("[t]he obvious purpose of this [agent] provision was to incorporate respondeat superior liability into the statute"); *Birkbeck,* 30 F.3d at 510 ("we read [this language] as an unremarkable expression of respondeat superior—that discriminatory personnel actions taken by an employer's agent may create liability for the employer").

The Court concedes that our reading of employer liability creates some tension with Supreme Court dicta in *Meritor Savings Bank FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In that case the Court noted in passing that "Congress wanted courts to look to agency principles for guidance" when determining employer liability under Title VII. *Id.* at 72, 106 S.Ct. at 2408. In contrast to our holding here, the law of agency recognizes personal liability for agents in certain situations: "Principal and agent can be joined in one action for a wrong resulting from the tortious conduct of an agent ... and a judgment can be rendered against each." Rest. (2d) Agency, § 359c(1) (1957).[3]

Nevertheless, the Court must face the obvious. The weight of the recent holdings of the courts of appeals, of other district courts in other circuits, and even of other judges within this circuit, do not recognize individual liability under Title VII. Therefore, absent a clear statement to the contrary by the Seventh Circuit or by the United States Supreme Court, this Court concludes that Title VII does not permit recoveries against individuals in their personal capacities.

## III. CONCLUSION

For the above stated reasons, the Court GRANTS defendants Johnson, Trimble and Negele's motion to dismiss. Accordingly, each is dismissed as a defendant in his or her individual capacity.

It is so ORDERED.

---

**3.** However, because "such common-law principles may not be transferable in all their particulars to Title VII," the Court's adoption of agency principles was at best equivocal. *Meritor,* 477 U.S. at 72, 106 S.Ct. at 2408.