Weda Annette WARD, Plaintiff,

v.

TIPTON COUNTY SHERIFF DEPARTMENT, Sheriff James Schroeder, in his official and individual capacities, Major Matthew Thompson, in his official and individual capacity, and Chester Netherton, in his individual capacity, Defendants.

No. IP 93–1736–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Aug. 12, 1996.

Brenda Franklin Rodeheffer, Monday Rodeheffer Jones & Albright, Indianapolis, IN, for Plaintiff.

·Mary J. Hoeller, Mark E. Walker, Lewis & Wagner, Indianapolis, IN, for Defendants.

## *ORDER*

McKINNEY, District Judge.

This matter comes before the Court on the petition of Weda Annette Ward ("Ward") for equitable relief subsequent to a jury verdict finding her former employer liable for retaliatory discharge in violation of 42 U.S.C. § 2000e–5. Specifically Ward seeks a total of $24,521.09 in lost income (back pay) from 1992 to March 31, 1996, $61,302.73 in future lost earning capacity (front pay) for a ten year period, pre- and post-judgment interest, and an injunction ordering defendant Tipton County Sheriff's Department (the "Department") to provide seminars and training to its staff on equal employment rights.

Ward has also petitioned this Court for an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 2000e–5(k) and 1988.[1] Because Ward had more than one set of attorneys working on her case at various times, she seeks reimbursement for the expenditures of time and money by each firm. For services performed by her first law firm, Stewart & Irwin, Ward asks for $16,235.00, and for services performed by her second firm, Monday Rodeheffer Jones & Albright, she requests an amount in excess of $60,-000.00.[2] Ward also seeks $2,625.55 in costs.

The Department has likewise petitioned the Court for an award of its attorney's fees

---

[1]. Section 2000e–5(k) provides in pertinent part:
In any action ... under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs....
Section 1988 of the 1964 Civil Rights Act similarly provides for the allowance of a reasonable attorney's fee to the prevailing party in an action brought pursuant to § 1983, as well as other civil

rights statutes. Because Ward did not prevail on her § 1983 claim, her attorney fee award may not be granted pursuant to this statute.

[2]. In the fee petition, Ward asks for $59,355.00 for the services of her lead counsel, Brenda Franklin Rodeheffer, and $8,080.00 for services of Patricia Jones who served as trial co-counsel. At the time of the petition Ward anticipated that these fees would increase.

and costs as a sanction against Ward and her counsel for "unreasonably and vexatiously multiplying the proceedings." *See* 28 U.S.C. § 1927. The allegedly sanctionable conduct occurred when Ward asserted and maintained claims that the Department argues lacked a legal and factual basis. Section 1927 allows a party to recover its attorney's fees and costs under such circumstances, as a sanction against an opposing party. Defendant Department seeks a total of $104,175.12 for its time and costs connected with defending against the allegedly groundless claims.

On April 1, 1996, a jury verdict was entered in favor of the Department on Ward's Title VII sexual harassment claim and in favor of Ward on her retaliatory discharge claim. Prior to trial, the Title VII claims brought against Sheriff James Schroeder, Matthew Thompson and Chester Netherton in their individual capacities had been dismissed. *See* Order on Motion to Dismiss dated Oct. 27, 1995. During the trial the Court granted the Department's motion for judgment as a matter of law on Count III of the Complaint, which included Ward's state law claims of defamation, intentional infliction of emotional distress, tortious interference with a prospective business relationship, and wrongful discharge. Counts I and II remained, which were the sexual harassment/hostile environment and retaliatory discharge claims (Count I), as well as the § 1983 claim based on an alleged violation of Ward's First Amendment rights (Count II). The Court subsequently dismissed the First Amendment claim prior to submitting the case to the jury.

## I. EQUITABLE RELIEF

### A. Standards

█ A victim of discrimination in violation of Title VII is presumptively entitled to complete relief. *Hutchison v. Amateur Elec. Supp., Inc.*, 42 F.3d 1037, 1044 (7th Cir.1994) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975)). In that regard, a successful Title VII plaintiff may obtain appropriate injunctive relief, which may include (but is not limited to) reinstatement or hiring, with or without back pay, "or any other equitable relief as the court deems appropriate." *See* 42 U.S.C. § 2000e–5(g). Under certain circumstances, and in lieu of reinstatement, courts have the discretion to award an amount of damages for front pay.[3] *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1141 (7th Cir.1994). Front pay is an equitable substitute for reinstatement. *Dominic v. Consolidated Edison of New York, Inc.*, 822 F.2d 1249, 1253 (2d Cir.1987).

█ Although reinstatement is the preferred remedy, it is not always appropriate. *Hutchison*, 42 F.3d at 1045. A number of factors should be considered when determining its propriety, including hostility in the past employment relationship and the absence of an available position for the plaintiff. *Downes*, 41 F.3d at 1141. If reinstatement is deemed inappropriate, it becomes necessary to assess the proper amount of front pay damages that would make the plaintiff whole.

█ The court determines the amount of front pay to award depending on whether:

1. the plaintiff has a reasonable prospect of obtaining comparable employment;
2. the time period for the award is relatively short;
3. the plaintiff intends to work or is physically capable of working; and
4. liquidated damages have been awarded.

*Id.; Williams v. Pharmacia Opthalmics, Inc.*, 926 F.Supp. 791, 796 (N.D.Ind.1996) (finding an award of front pay in Title VII context proper and consistent with the 1991 amendments). Front pay is awarded for a reasonable period of time, until a date by which the plaintiff, using reasonable diligence, should have found comparable employment. *Hutchison*, 42 F.3d at 1045. An award must be grounded in available facts, acceptable to a reasonable person and not highly speculative. *Downes*, 41 F.3d at 1142.

---

**3.** Front pay is a lump sum "representing the discounted present value of the difference between the earnings [an employee] would have received in his old employment and the earnings he can expect to receive in his present and future, and by hypothesis inferior, employment." *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1141, n. 8 (7th Cir.1994).

It cannot be based simply on a plaintiff's own stated intentions with regard to how long he or she would have worked. *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 574 (7th Cir.1995).

As noted, a successful plaintiff may also obtain an award of back pay. Generally, that award extends from the date of the adverse employment action until reinstatement. *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1369 (7th Cir.1992), *cert. denied*, 507 U.S. 915, 113 S.Ct. 1270, 122 L.Ed.2d 665 (1993). Once a plaintiff establishes the amount of back pay she claims to have lost because of her employer's discrimination, the burden of production shifts to the defendant. Unless the defendant can show either that the plaintiff failed to mitigate her damages or that the amount is incorrect, back pay will be awarded. *Hutchison*, 42 F.3d at 1044. To establish a failure to mitigate, a defendant must show: 1) the plaintiff failed to exercise reasonable diligence to find other employment; and 2) there was a reasonable likelihood that by exercising such diligence the plaintiff would have found comparable work. *Id.*

"Comparable work" is a term that appears in both back and front pay determinations. It has been defined, with reference to mitigation, as a position that affords the plaintiff "virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status" as the previous position. *Id.* There is no reason to think the term means anything different in the front pay context. "Title VII claimants are not obliged to go into another line of work, accept a demotion, or take a demeaning position," in order to mitigate their damages. *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1235 (7th Cir.1986) (citing *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231, 102 S.Ct. 3057, 3065, 73 L.Ed.2d 721 (1982)); *see also Pierce*, 65 F.3d at 575 (plaintiff who had been a senior analyst did not have to suffer the "great humiliation" of being a file room clerk in order to avoid a reduction in his award).

In *McKnight*, the trial court had awarded the victim of race discrimination both compensatory and punitive damages pursuant to 42 U.S.C. § 1981, but had denied reinstatement and front pay. *McKnight*, 973 F.2d at 1369. The appellate court vacated the § 1981 award, and remanded the case for determination of whether McKnight should be reinstated or given front pay to be made whole. *Id.* Upon remand, the trial court decided that reinstatement was inappropriate because McKnight sought a completely different job, for which he could not prove he was qualified and the availability of which was uncertain. *Id.* at 1370. This left the issue of front pay to be decided.

The *McKnight* court stated that "to recover lost earning capacity, a plaintiff must produce 'competent evidence suggesting that his injuries have narrowed the range of economic opportunities available," or a diminution in his ability to earn a living. *Id.* Such damages, the court noted, "are not intended to insure a plaintiff's future financial success." *Id.* at 1371. Instead, they should extend only until a date at which "the sting of any discriminatory conduct has ended." *Id.* In another case the court noted that date to be when "the wounds of discrimination should have healed." *Smith v. Great Amer. Rest.*, 969 F.2d 430, 438 (7th Cir.1992) (citing *Syvock v. Milwaukee Boiler Man. Co., Inc.*, 665 F.2d 149, 160 n. 14 (7th Cir.1981), *overruled* on other grounds, *Coston v. Plitt Theatres, Inc.* 860 F.2d 834, 837 (7th Cir.1988)).

To prove the proper amount of front pay, a plaintiff is expected to provide the court with data as to the length of time she would have worked for the defendant, the amount of money she would have made in that period of time, and the applicable discount rate. *McKnight*, 973 F.2d at 1372. Although front pay awards are by nature speculative, the longer the period of time for which an award is sought, the more speculative it becomes. *Id.* The *McKnight* court's refusal to grant an award on the grounds that McKnight had failed to present any evidence with which to calculate a front pay award, was upheld on appeal. *Id.*

With these standards and guidelines in mind, the Court now turns to Ward's requests.

### *B. Back Pay*

■ An award of back pay to a successful Title VII plaintiff is "presumptively appropriate." *See E.E.O.C. v. O & G Spring and Wire Forms Specialty Co.*, 38 F.3d 872, 880 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995). If discrimination has been proven, back pay may only be denied "for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination ... and making persons whole." *Id.* (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975)). Noting no such reasons in Ward's case, the Court finds it proper to award the entire amount of back pay requested.

■ Ward asked for an amount equal to her annual salary less any amounts she had actually received, either from the Department or from the employment she acquired in mitigation of her damages. This is the proper measure of damages. *See Pierce,* 65 F.3d at 575. Had she continued working for the Department in 1992, Ward would have earned $12,979.10. For subsequent years, Ward would have earned a conservative 2% more each year, or $13,238.68 in 1993, $13,-503.46 in 1994, $13,773.52 in 1995, and $3,512.25 in the first quarter of 1996.

Her actual income in 1992 was $11,954.89, which resulted in a loss of $1,024.21 for that year; in 1993 she made $7,584.80, resulting in a $5,653.89 loss; in 1994 she earned $4,887.89 for a loss of $8,615.57; in 1995 she earned $6,568.27, resulting in a $7,205.25 loss; and for the first quarter of 1996 she earned $1,491.00, for a loss of $2,021.25. Based on these figures, Ward's total loss for the period from August, 1992, when she was wrongfully discharged, to March 31, 1996, at approximately the time the jury verdict was rendered, was $24,520.17.

The Court notes that the Department, in opposing a back pay award, does not argue that Ward failed to mitigate her damages, nor was any evidence presented on this issue. Instead, the Department argues that a back pay award should not be granted for the entire period from 1992 through 1996 because it is speculative that Ward would have continued working for the defendant. Referring to evidence presented at trial about Ward's attempt to obtain a similar position with the Carmel Police Department, the Department asks this Court to infer that Ward was interested in terminating her employment with the defendant. By Ward's own testimony, however, she was seeking other employment to get away from the sexual harassment she perceived herself to be experiencing at the Department.

Although Ward was unsuccessful in proving she was actually harassed, she did prove that she was discharged in retaliation for having complained about the alleged harassment, which implies a finding that she had a plausible basis for believing she was the victim of discrimination. *See Alexander v. Gerhardt Enters., Inc.,* 40 F.3d 187, 195 (7th Cir.1994) (prima facie case of retaliation requires plaintiffs to have engaged in a protected activity, meaning they must have reasonably believed in good faith that the practice they opposed violated Title VII). Under these circumstances, the fact that Ward attempted to get another job does not mean that in the absence of any perceived or actual harassment she would have terminated her employment with the Department.

■ Nor does the depression she suffered after her retaliatory discharge serve to diminish her ability to obtain back pay, as the Department contends. The goal of Title VII remedies is to make a wronged plaintiff whole, or, more precisely, to put her back in the position she would have occupied had no discrimination occurred. *Albemarle,* 422 U.S. at 421, 95 S.Ct. at 2373. In Ward's case, that position would have been one without a severe depression, because her depression was caused at least in part by the Department's retaliatory treatment of her. Thus, the fact that she suffered depression does not render her continued employment with the Department, had she not suffered discrimination, uncertain.

Moreover, by reducing Ward's back pay award because depression made her unable to work, the Court not only would be denying her an adequate remedy for her injury, but also would be rewarding the Department for

its wrongdoing. Such a result would frustrate the central purpose of Title VII.

### C. Front Pay

Because of the nature of the charges lodged by Ward against certain members of the Department, and the hostility and negative publicity generated by those charges, the Court finds it inappropriate to order her reinstatement. Also, no evidence was presented that a dispatcher position is currently available. Consequently, consideration of a front pay award is necessary.

▆ Ward's front pay request, however, is unreasonable in light of her testimony at the post-trial hearing held on July 15, 1996. She requested ten years of front pay, because that was the length of time allowed in *Pierce*, an age discrimination case. *Pierce*, 65 F.3d at 574. Pierce's ten-year-period of front pay reflected the court's finding that he would have worked for the defendant until he retired. *Id.* The court deducted an amount equivalent to his expected minimum wage earnings for the ten year period. *Id.* at 575. Ward would like this Court to contemplate a similar front pay award, until she is of retirement age. However, she has offered no evidence to support a finding that she will be unable to obtain comparable employment during that period of time, which is the standard applied in this Circuit.

▆ Front pay is to be awarded, if at all, for a reasonable period of time, until a date by which the plaintiff, using reasonable diligence, should have found comparable employment. *Hutchison*, 42 F.3d at 1045. Here, Ward has sought comparable employment for nearly four years, apparently without success. According to testimony at trial, her lack of success is due in part to the negative publicity surrounding her discharge. Cognizant of the deleterious effect such publicity can have on a job search, the Court finds it reasonable to award some amount of front pay for a period commencing with the jury verdict.

▆ That period must end, however, on the date of this order, because Ward has not demonstrated to this Court that she continues to suffer the sting of discrimination, or that she continues to use reasonable diligence in her search for comparable employment. At the hearing, Ward testified that both full and part-time nursing assistant positions were available at Howard Community Hospital, although such positions do not pay as much as her records clerk position. She has not actively sought a nursing aide position anywhere, even though she has been trained to perform such a job, because she just does not like that type of work.

Ward also testified that she never requested a full-time day position as a records clerk when the night position she had was eliminated. The Court finds that Ward's refusal to attempt to obtain full time employment as a nursing aide, or as a medical records clerk, either of which would be comparable in status, pay, hours and promotional opportunities to her previous position as a dispatcher, to be unreasonable. Consequently, an award of front pay beyond the date of this order would be inappropriate.

Ward would have earned $1,170.75 per month in 1996 if she still worked for the Department. By multiplying that rate times four months (April through July, 1996) the Court finds that the amount of income she would have received from the Department since the date of trial equals $4,683.00. In those same four months Ward actually earned an estimated $1,860.62,[4] making the amount of $2,822.38 an appropriate front pay award.

This amount represents a relatively short time period during which Ward has had a reasonable prospect of obtaining comparable work. She is physically capable of performing either of the noted jobs. No liquidated damages have been awarded, and Ward has testified that she continues to seek, and fully intends to obtain, comparable employment. Thus, the amount of front pay the Court

4. Ward had earned $1,560.62 as of the pay period ending July 6, 1996. Plf's Ex. 1 and 2. Her earnings at her current job average approximately $100.00 per week, and three weeks have passed since the hearing. Consequently, the Court added another $300.00 to the amount she has earned as of this date.

finds to be appropriate meets the factors set forth for such an award.

### D. Pre-Judgment Interest

 Prejudgment interest is likewise appropriate in this case because the amount of Ward's economic loss is easily ascertainable, a primary requirement for calculating such interest. *See Hutchison,* 42 F.3d at 1047. As already noted, the wages Ward would have received from the time she was discharged until the time of judgment can be easily determined from her prior records. She was a full-time employee with the Department, and her hours did not vary significantly. "Prejudgment interest is an element of complete compensation and a normal incident of relief under Title VII." *Id.* at 1046. Otherwise, the defendant would receive the benefit of the time value of the money, which would provide an incentive to delay the proceedings. *Id.* Without prejudgment interest, a plaintiff is not fully compensated for both the loss of income and the loss of use of that income. *See Downes,* 41 F.3d at 1144.

 Ward did not request a specific interest rate be applied to her award. The rate to apply is within the discretion of the Court. *E.E.O.C. v. O'Grady,* 857 F.2d 383, 392 (7th Cir.1988). Other district courts in the Seventh Circuit have used the federal post-judgment interest rate. *See Daniels v. Essex Grp., Inc.,* 740 F.Supp. 553, 561 (N.D.Ind.1990), *aff'd,* 937 F.2d 1264 (7th Cir. 1991); *Reeder–Baker v. Lincoln Nat. Corp.,* 649 F.Supp. 647, 662 (N.D.Ind.1986), *aff'd,* 834 F.2d 1373 (7th Cir.1987). Consequently, this Court will follow their lead, and apply the statutory post-judgment interest rate for the relevant periods. That rate varies in relation to the amount received at auction for fifty-two week U.S. Treasury bills. Currently, it is 5.81%.

 The amount of prejudgment interest to which Ward is entitled is as follows:

| 1992 | $1,024.21 × 3.91% [5] | = | $40.05 |
| 1993 | $5,653.89 × 3.46% | = | 195.62 |
| 1994 | $8,615.57 × 5.26% | = | 453.18 |
| 1995 | $7,205.25 × 6.04% | = | 435.20 |
| 1996 | $4,843.63 × 5.81% | = | 281.41 |

**5.** The rate selected for each year is based on the

The total prejudgment interest accumulated is *$1,405.46.* Post-judgment interest is statutorily required, and the Court need not make a separate award for plaintiff to collect it.

### E. Injunctive Relief

 Ward asked the Court to issue an injunction ordering the Department to conduct seminars and training for its staff on equal employment rights. The purpose of such an injunction would be to modify the behavior of the Department's employees and to educate them. Given the amount of attention and publicity generated by this case, and the fact that the Department (and indirectly the taxpayers of Tipton County) will have to pay Ward nearly $80,000.00 in damages, and her attorneys nearly $60,000.00 in fees, the requested extraordinary injunctive relief seems unnecessary. Consequently, the Court **DENIES** Ward's request for injunctive relief.

### ATTORNEY'S FEES

### A. Ward's Title VII Petition

 A prevailing party is entitled to reasonable attorney fees and costs pursuant to § 2000e–5(k). *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983). To determine if the plaintiff prevailed, the court looks at whether the plaintiff succeeded "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* at 433, 103 S.Ct. at 1939; *Dunning v. Simmons Airlines, Inc.,* 62 F.3d 863, 872 (7th Cir.1995). Here, Ward achieved most of the benefit that she could have obtained regardless of her Title VII theory, because she was awarded an amount by the jury equal to the compensatory damages cap for an employer the size of the Department.

Following the 1991 amendments to the Civil Rights Act, a Title VII plaintiff's right of recovery was extended to include an award of compensatory and punitive damages, as limited in the amended statute. *See* 42 U.S.C. § 1981a (compensatory damages exclude back pay, interest on back pay or other equitable relief available under

average of all of the auctions for that year.

§ 2000e–5(g)). The amount recoverable under these new damage provisions is capped depending on the size of the defendant employer. *See* 42 U.S.C. § 1981a(b). For an employer with more than fourteen but fewer than 101 employees, the amount of compensatory damages cannot exceed $50,000.00. 42 U.S.C. § 1981a(b)(3)(A). In this case, the jury awarded Ward $50,000.00 in compensatory damages. Consequently, Ward crosses the threshold into the realm of further consideration of her attorney fee request.

Next, the court must assess what is a reasonable number of hours for her attorneys to have expended on this case, and multiply that times a reasonable hourly rate. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. To assist with this calculation, Ward's attorneys have submitted affidavits and time statements. Although an affidavit has been submitted for Ward's first set of attorneys, the Court finds it inappropriate to use any of their figures to calculate a fee award. First, Stewart & Irwin was not responsible for successfully litigating this action, and according to Ms. Rodeheffer's testimony at the hearing, she did not even use the complaint that firm had drafted.

Second, Stewart & Irwin had entered a contingency fee agreement with Ward, and subsequently declined to represent her, referring her instead to Ms. Rodeheffer. No evidence was presented that Ward was obligated to pay this firm anything. For these reasons, the Court finds it unnecessary, if not improper, to require the payment of any attorney fees or costs incurred by Stewart & Irwin.

Ward's trial counsel, the attorneys actually responsible for the successful resolution of her claim, likewise submitted affidavits and time statements. When reviewing an attorney's expenditures of time, courts may exclude hours that are not "reasonably expended" on the litigation, such as overstaffing, duplication of effort, or hours not necessary in light of the experience of the attorney. *Id.* at 434, 103 S.Ct. at 1939–40. With this in mind, the Court notes that the number of hours submitted by Ward's attorney is reasonable, with certain exceptions. Notably, the Court will not allow reimbursement for five hours spent waiting for the jury to return a verdict, nor will it allow those hours admittedly spent on the claims the Court dismissed before the case went to the jury. By Rodeheffer's testimony at the hearing, that included approximately 16.95 hours.

In addition, Ms. Rodeheffer, who states she has practiced employment law since 1979, and who has worked predominantly on Title VII cases for the last ten years, should not have needed 49.6 hours to research the issues involved in this litigation. At most, she might have required ten or twelve hours to refresh herself on the current state of the law as it relates to the facts of this case. Therefore, the number of hours expended by her on research will be reduced by thirty-seven, making a total of 12.6 hours for research.

Finally, the Court notes that both Ms. Rodeheffer and Ms. Jones claim to have spent time working on the closing argument for the trial. Ms. Jones recorded nine hours for preparation of the argument, and Ms. Rodeheffer reported twelve and one-half hours. Finding this to be a duplication of efforts, the Court will reduce the hours allowed for preparation of the final argument by one-half, to 10.75 hours. A total of 69.7 hours will be deducted from the number of hours expended by Ms. Rodeheffer and Ms. Jones, with 4.5 of those hours at Ms. Jones's rate of $100.00 per hour, and the remaining hours computed at Ms. Rodeheffer's $150.00 per hour rate.

Once the court has calculated a reasonable number of hours times a reasonable hourly rate, it must consider the results obtained by the litigation. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40; *Dunning*, 62 F.3d at 872. The relationship between the extent of success of the litigation and the amount of the attorney fees to be awarded is crucial. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40. It is especially important when a plaintiff has succeeded on only some of her claims. *Id.* Here, Ward succeeded on her Title VII retaliation claim, but not on her sexual harassment claim, her First Amendment claim, or any of her state law claims.

However, if the claims are based on a common core of facts and related legal theories, it is difficult for the court to sort out the hours properly relating to the successful claim. *Id.* at 435, 103 S.Ct. at 1940. Rather, the court should focus on the significance of the relief obtained in relation to the total number of hours. *Id.*

Ward has obtained a jury verdict representing the full statutory limit of compensatory damages available against the Department. She has also obtained almost all of the back pay she requested, although her front pay award was significantly reduced. In light of these excellent results, the Court is not inclined to reduce the attorney fee award any further than already noted above. In sum, Ward is entitled to an attorney fee award for the hours actually expended by Ms. Rodeheffer, minus 65.2 hours, and by Ms. Jones, minus 4.5 hours. She is not entitled to any attorney fee award for the time spent by her first law firm, Stewart & Irwin. This is because no evidence was presented that she was required to pay them anything under the contingency contract she initially entered with them, and because they were not responsible for the successful litigation of her claim against the Department.

At the hearing, Ward's attorneys indicated that they have expended additional hours since the attorney fee petition was filed. Specifically, Ms. Rodeheffer claims to have spent an additional twenty-two hours, and Ms. Jones spent an additional .6 hours. No evidence was presented regarding the specific break-down of these hours, or how they relate to the success of Ward's litigation. Consequently, those hours will not be included in this fee award. For Ms. Rodeheffer, Ward is awarded an amount equal to 330.5 hours at $150.00 per hour, or $49,575.00; for Ms. Jones, Ward will be allowed an amount equal to 76.3 hours at $100.00 per hour, or $7,630.00. The total attorney fee award is $57,205.00, plus a reasonable amount for costs. The allowable costs for which the plaintiff submitted documentation amount to $1,994.85 and those costs should be included in the award, making a total of $59,199.85.

## B. The Department's Petition for Fees

The Department seeks an award of its attorney's fees and costs as a sanction against Ward and her counsel for "unreasonably and vexatiously multiplying the proceedings." *See* 28 U.S.C. § 1927. According to the Department, Ward's counsel acted unreasonably and vexatiously by maintaining the individual capacity Title VII claims against Sheriff James Schroeder, Matthew Thompson, and Chester Netherton, the First Amendment claim and the state claims, beyond the time when she knew or should have known they were without a reasonable basis in law or fact.

■■■■ Vexatious conduct requires subjective or objective bad faith, intentional ill will or recklessness. *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184 (7th Cir.1992). It is demonstrated by subjective evidence of malice, objective evidence of recklessness, or evidence showing indifference to statutes, rules or court orders. *Id.* at 1184–85. The Seventh Circuit has stated that ordinary negligence does not constitute vexatious conduct. *Id.* at 1184. Rather, it requires a showing of at least recklessness, such as when counsel raises "baseless claims despite notice of the frivolous nature of those claims." *Id.* In fact, most courts require evidence of either subjective or objective bad faith. *Id.* at 1185. Extreme negligence approaches the recklessness standard and may suffice under certain circumstances.

■■■■ Section 1927 sanctions may be imposed when counsel acts in an "objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice." *Vandeventer v. Wabash Nat. Corp.,* 893 F.Supp. 827, 841 (N.D.Ind. 1995). Such sanctions are directed at conduct that prolongs the litigation. *Id.* at 842. Nevertheless, the party moving for sanctions has the burden of showing bad faith. *Id.* Here, the Department has offered little evidence of bad faith. Instead, the defendant seeks to have the Court infer bad faith because Ward lost on her claims against the three individuals, her state law claims, and her First Amendment claims.

It does not work that way. *See Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421–22, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (pointing out that meritless means groundless or without foundation, not that the plaintiff ultimately lost his case). With respect to the Title VII claims Ward brought against the individuals, the Court notes that neither the Supreme Court nor the Seventh Circuit had ruled that there was no supervisor liability under Title VII at the time Ward brought her claims. *See Gastineau v. Fleet Mortgage Corp.*, 884 F.Supp. 310, 311 (S.D.Ind.1994) (noting that the Seventh Circuit has not so ruled, and noting cases in which supervisor liability was upheld). In *Williams v. Banning*, 72 F.3d 552 (7th Cir. 1995), the Seventh Circuit cited a recent decision in the Americans with Disabilities Act context for the proposition that there is no individual liability for supervisors under Title VII. *Williams*, 72 F.3d at 553 (citing *E.E.O.C. v. AIC Security Invest., Inc.*, 55 F.3d 1276 (7th Cir.1995)). Given that Ward's claims against the individuals were dismissed on October 27, 1995, and *Williams* was not decided until December 21, 1995, the Court cannot find bad faith, recklessness, or even extreme negligence, in Ward's attempt to impute liability to the individuals in question.

Ward's other claims were dismissed during the trial when it became apparent that insufficient evidence was presented to support having the jury determine the facts. In Count II, the protected speech for which Ward claims to have been punished was her filing of a charge with the E.E.O.C. This was a plausible theory in light of the facts and the ultimate outcome, and her attorney's failure to dismiss it prior to trial could not amount to more than negligence. It certainly was not bad faith or recklessness.

■ The state law claims in Count III were neither baseless nor frivolous. Both of these words imply some intentional disregard for the law and the facts. At most, Ward's counsel exercised less than good judgment by proceeding to trial on the weaker theories in her case. However, § 1927 sanctions were not intended to punish such lapses in judgment, and this Court declines to interpret the section in a way that has that effect. Particularly in the area of law represented by this litigation, courts should be careful not to take any actions that will discourage employees from bringing claims that may not be "airtight." *See E.E.O.C. v. Consolidated Serv. Sys.*, 30 F.3d 58, 59 (7th Cir.1994) (suggesting that the "frivolous" standard is much more stringent than "not substantially justified" in Title VII context); *see also Kizer v. Children's Learning Ctr.*, 962 F.2d 608, 613 (7th Cir.1992) (affirming decision not to impose Rule 11 sanctions on Title VII plaintiff who failed to make out a prima facie case, because claim was not filed with improper motive or inadequate investigation); *Warren v. City of Carlsbad*, 58 F.3d 439, 444 (9th Cir.1995) (noting that district courts must exercise caution in awarding fees to a prevailing defendant in order to avoid discouraging legitimate though not airtight suits).

■ Congress intended to promote vigorous enforcement of the provisions of Title VII, *Warren*, 58 F.3d at 444, which is one reason behind awarding attorney fees to prevailing parties. *Christiansburg*, 434 U.S. at 418, 98 S.Ct. at 698–99. The law also allows damages against an employer for retaliating against an employee who complains of discrimination, even if the employee does not succeed in proving discrimination, as here. Given that no evidence of bad faith, recklessness or extreme negligence was presented, the Department, who has the burden of proving sanctionable conduct, has failed to persuade this Court that sanctions are in order. The Department's Petition for Attorney Fees is **DENIED**.

### *CONCLUSION*

The Court has found that Ward's request for equitable relief in the form of back pay, front pay and pre-judgment interest is well-taken and should be **GRANTED**. Ward succeeded in proving to a jury that she was the victim of a retaliatory discharge in violation of Title VII, and she was awarded the statutory limit of compensatory damages. The Department failed to provide the Court with any reason not to award back pay, and an award of $24,520.17 has been ordered. A front pay award has also been ordered for

the period from April 1, 1996, to the date of this order, in the amount of $2,822.38.

Likewise, the Court has found that pre-judgment interest should be awarded because the amount of Ward's damages was easily ascertainable and could have been predicted by the Department. The amount of pre-judgment interest awarded is $1,405.46. Ward's request for an injunction ordering the Department to conduct special training for its employees on the issue of equal employment rights was found to be unnecessary, and is therefore **DENIED.**

Both parties petitioned for their attorney's fees and costs to be reimbursed, Ward as a prevailing party, and the Department as sanctions against Ward. The Court has found that Ward is a prevailing party, and her petition for attorney fees and costs should be **GRANTED,** but the amount has been reduced to reflect the Court's determination of what is reasonable. She may recover a total of $59,199.85 in reasonable attorney fees and costs. The Department's request for fees as a sanction, however, is not adequately supported and is therefore **DE-NIED.**