874 F.2d 461
 27 Fed. R. Evid. Serv. 1365
 Keith HARRIS, Plaintiff-Appellant,
v.
Lt. Dennis R. DAVIS, Capt. Richard Betuski, Assistant Warden
Jim Buch, Stanley M. Buchheit, James Kolar, M.D., and
Unknown Members of the Menard Adjustment Committee,
individually and in their official capacities, Defendants-Appellees.
 No. 87-3048.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 8, 1988.
Decided May 8, 1989.
Rehearing and Rehearing En Banc Denied July 21, 1989.
 
 Benjamin L. Sells, Jenner & Block, Chicago, Ill., for plaintiff-appellant.
 William D. Frazier, Atty. General's Office, Chicago, Ill., for defendants-appellees.
 Before BAUER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 Keith Harris appeals from a magistrate's decision denying his motion for a new trial. We affirm.
 
 I.
 
 2
 On July 28, 1985, Keith Harris, a prisoner at the Menard Correctional Center in Menard, Illinois, was notified that his girlfriend and twin brother had come to visit him. Prior to seeing his visitors, Harris, in accordance with prison regulations, submitted to a strip search conducted by defendant Stanley Buchheit, a correctional officer at Menard. Before commencing the strip search, Buchheit confiscated two photographs from the plaintiff that depicted Harris in suggestive poses. Under prison regulations, prisoners could not give photographs to visitors without the express permission of the warden. All parties agree that Harris had not obtained this permission.
 
 
 3
 Buchheit's search of Harris proceeded in routine fashion. Shortly before the search was to have concluded, however, Buchheit thought he saw Harris place some type of object in his mouth. Suspecting that Harris was in possession of contraband, Buchheit ordered the plaintiff to open his mouth. Harris complied with this order but no object was found.
 
 
 4
 The absence of any object in Harris' mouth led Buchheit to conclude that Harris had swallowed the contraband during the investigation. This suspicion was communicated to defendant Kolar, an attending physician at Menard, who suggested that an emetic be administered to Harris. Harris, with the knowledge of all the defendants, eventually took the emetic although there was conflicting testimony as to whether he did so voluntarily. The emesis did not reveal evidence of contraband in Harris' body.[1]
 
 
 5
 Upon concluding the strip search of Harris, Buchheit prepared a disciplinary report about the incident which was presented to Capt. Betuski. The disciplinary report charged Harris with four separate violations of prison regulations: possession of unauthorized property (the photographs); violation of rules (suspected possession of contraband); insolence; and abuse of privileges. After reviewing the disciplinary report, Betuski consigned Harris to deadlock for three days. At Menard, an inmate on deadlock is temporarily confined to his cell pending a disciplinary hearing on the charges against him. Under prison regulations an inmate could only be placed in deadlock for violations that fell into one or more of three categories including conduct that posed a threat to the security of the institution. Betuski determined that Harris' possible ingestion of contraband posed a threat to the security of Menard. Betuski did not consider the other violations in reaching this decision.
 
 
 6
 Shortly after being assigned to deadlock, Harris began experiencing stomach cramps, headaches and other assorted ailments which he claimed persisted for an extended period of time. Despite these ailments, Harris remained in deadlock for the entire three day period. Five days later, Harris received a disciplinary ticket for possession of homemade moonshine in his cell.
 
 
 7
 In 1986, Harris filed this action under 42 U.S.C. Sec. 1983 against defendants Davis, Betuski, Buch, Buchheit and Kolar. The suit alleged that the defendants subjected Harris to cruel and unusual punishment by forcing him to take the emetic and by denying him necessary medical assistance, while he was in deadlock. In addition, the suit charged that Capt. Betuski and Officer Buchheit violated Harris' procedural due process rights by improperly consigning him to deadlock without a hearing. Prior to trial, plaintiff's attorney made a motion in limine seeking to exclude all references to the suggestive photographs and the disciplinary ticket at trial. The magistrate[2] excluded the photographs and the disciplinary ticket themselves but permitted references to their contents. Defense counsel took advantage of this ruling by referring to both the suggestive nature of the photographs and the disciplinary ticket in his opening statement, during cross-examination and particularly during closing argument. The case was ultimately tried to a jury which returned a verdict in favor of the defendants on all counts.[3]
 
 
 8
 After the verdict was entered, defendant's attorney moved for a new trial on the grounds that the magistrate committed reversible error by allowing references to the photographs and the disciplinary ticket. The magistrate questioned the wisdom of some of his rulings in retrospect but concluded that any errors were harmless. Plaintiff appeals from this decision.
 
 II.
 
 9
 The principal issues on appeal are whether evidence concerning the photographs and the disciplinary ticket were properly admitted under Federal Rule of Evidence 404(b)[4] and if not whether the error was harmless.[5] In this circuit, evidence of other acts must satisfy a four-part test in order to be admissible under Rule 404(b). First, the evidence must be directed toward establishing a matter in issue other than the defendant's propensity to commit the act charged. United States v. Shackleford, 738 F.2d 776, 779 (7th Cir.1984). Second, the other act must be similar enough and close enough in time to be relevant to the matter in issue. Id. Third, the evidence must be such that the jury could find "that the act occurred and that the defendant was the actor." Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988). Finally, the probative value of the evidence must not be substantially outweighed by its prejudicial effect. Shackleford, 738 F.2d at 779.
 
 
 10
 We believe that references to the suggestive nature of the photographs were not admissible under Rule 404(b). Plaintiff's due process claim alleged that Capt. Betuski abused his discretion by consigning Harris to deadlock without a hearing for conduct that posed a threat to the security of the institution. Although the disciplinary report reviewed by Betuski noted that Harris possessed suggestive photographs, Betuski testified that this fact played no part in his decision. Rather, Betuski's decision was based solely on the alleged contraband incident. Thus the only issue with regard to the procedural due process claim was whether Betuski abused his discretion by determining that swallowing contraband was conduct that threatened the security of the institution; the presence of suggestive photographs was completely irrelevant.
 
 
 11
 We also believe that all references to the disciplinary ticket should have been excluded. Although evidence that Harris had swallowed homemade moonshine a week after taking the emetic might have provided an alternative explanation for plaintiff's claimed injuries and thus might have been admissible on the issue of damages, defendants never established that Harris had ingested any of the alcohol. Defendants wanted the jury to infer that Harris had swallowed alcohol from the fact that he possessed alcohol. This inference, however, is so remote that the probative value of the information that Harris had been disciplined for possessing moonshine was substantially outweighed by its prejudicial effect.[6]
 
 
 12
 The determination that the magistrate erroneously admitted evidence of the contents of the photographs and disciplinary ticket does not of course end the inquiry, for not all errors warrant the reversal of the verdict below. In the present case, the magistrate's erroneous evidentiary decisions did not result in a constitutional violation. Consequently, the errors will be deemed to be harmless unless they had a "substantial and injurious effect or influence on the jury's verdict." Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946); United States v. Beasley, 809 F.2d 1273, 1280 (7th Cir.1987).
 
 
 13
 After reviewing the entire record, we are persuaded that the improperly admitted evidence did not substantially affect the jury's verdict. At trial, several witnesses, including non-parties to the lawsuit, flatly contradicted plaintiff's claim that he had been forced to take the emetic against his will. In addition several witnesses testified that plaintiff had not suffered significant long term injuries and had not been denied necessary medical assistance. More importantly, this testimony was not shaken by plaintiff's direct[7] or cross examination. Conversely, the credibility of plaintiff's claim that he had suffered long term injury from the ingestion of the emetic was substantially undercut by his failure to adduce medical testimony in support of this assertion.[8]
 
 
 14
 The possible prejudicial effect on plaintiff's procedural due process claim is even more tenuous. To triumph on this claim plaintiff had to prove that Betuski abused his discretion in determining that the possible possession of contraband was a threat to the security of the institution. Both Betuski and Buchheit testified that the suspected possession of contraband rendered an individual a threat to the security of the institution within the meaning of the institutional directive. In contrast, plaintiff failed to adduce any testimony that contradicted this assertion.
 
 
 15
 In these circumstances we believe that the admission of evidence relevant to the contents of the photographs and the disciplinary ticket constituted harmless error. This is not to say that we condone the assistant attorney general's presentation in this case. In particular, counsel's discussion of the contents of the photographs was inappropriate and might well have resulted in reversal in another context. Moreover, we wish to emphasize that district judges and magistrates, when ruling on evidentiary issues in cases of this type, must always reflect upon the unique status of the plaintiff and should not view the invocation of the harmless error doctrine in the present case as an invitation to dispense with the searching inquiry often required under the Federal Rules of Evidence. Further, on appeal, the harmless error doctrine must never be employed in a manner which produces a less than thorough analysis of the sometimes sensitive evidentiary issues inherent in prisoner civil rights cases. After reviewing the entire record, however, we are satisfied that the erroneous admission of references to the contents of the photographs and the disciplinary ticket did not affect the jury's resolution of the issues in this case.[9]
 
 
 16
 AFFIRMED.
 
 
 17
 RIPPLE, Circuit Judge, dissenting.
 
 
 18
 The most essential ingredient of any trial in any American courtroom is fairness--fairness for all the litigants. When one of the litigants comes to the trial process marked with a stigma that creates a significant barrier to rational evaluation of the evidence, the trial court faces one of its most difficult tasks. In such a situation, the trial judge is obligated to exercise extreme caution to ensure that the process is a fair one, and that the ultimate determination is based on an objective assessment of the evidence and not upon passion or prejudice.
 
 
 19
 The trial court faced such a challenge in this case. Indeed, it had before it one of the most difficult tasks facing the federal trial judiciary today--ensuring fairness in a trial where the plaintiff is a prisoner, where the defendants are state officials, and where the events that form the basis of the cause of action involve disciplinary events within the prison. In such a context, the plaintiff is hardly the most sympathetic of litigants. It is rare that, with respect to the incident in question, the plaintiff is completely blameless. Indeed, in many cases, as in this one, the gravamen of the complaint is based on the alleged overreaction of the officials to a legitimate problem.
 
 
 20
 Here on appeal, this court is presented with two of the most recurring challenges to the obligation to provide a fair trial to a prisoner--the admission of inflammatory evidence and the assertion of "harmless error." I agree with my brothers that the district court erred by admitting evidence of the photographs and of the disciplinary ticket.[1] With respect to the application of the harmless error doctrine, prisoner civil rights actions must be evaluated under the same standard as that employed in other civil actions.
 
 
 21
 My disagreement is limited to the court's determination that, on this record, the errors were indeed harmless. As is often the case in prisoner litigation, the plaintiff was required to rely largely on the testimony of adverse witnesses and fellow prisoners. Since he is complaining about the absence of medical assistance at the time he allegedly was suffering from the ingestion of the emetic, we hardly can fault him with respect to the quality of the medical evidence. Under these circumstances, the plaintiff had to rely on his own testimony to support his claim. Here, the defendants impermissibly eroded whatever credibility the plaintiff may have been able to project despite his status. Under these circumstances, the errors clearly cannot be characterized as harmless.
 
 
 
 [1]
 A disputed issue at trial was whether Harris had followed the proper procedures in taking the emetic. In order to completely vacate the stomach, the emetic must be taken with six to eight glasses of water. Harris testified that after taking the emetic he consumed approximately this amount of water. The defendants, however, asserted that Harris consumed only two glasses of water and argued that the emesis did not therefore accurately reflect the presence of contraband in his body
 
 
 [2]
 With the consent of the parties, the case was tried before a magistrate
 
 
 [3]
 The magistrate directed a verdict for Officer Buchheit on the procedural due process claim at the end of plaintiff's case
 
 
 [4]
 Rule 404(b) states that:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 [5]
 Defendants also raise two procedural points on appeal. First, defendants claim that plaintiff has waived any objections to the admission of evidence concerning the photographs by introducing an exhibit that referred to their contents. Once the district court determined that the evidence was admissible, Harris could treat this decision as the law of the case and could introduce an exhibit that referred to the photographs without waiving his initial objection. See Cook v. Hoppin, 783 F.2d 684, 691 n. 2 (7th Cir.1986)
 Second, defendants argue that the plaintiff waived any challenge to evidence concerning the disciplinary ticket by failing to make a contemporaneous objection at trial. In this circuit, however, an unsuccessful motion in limine serves to preserve an issue for appeal. Thronson v. Meisels, 800 F.2d 136 (7th Cir.1986).
 
 
 [6]
 Defendants also contend that the references were introduced to impeach plaintiff's credibility and were thus admissible under Fed.R.Evid. 608. We disagree. The plaintiff never denied that he carried the photographs or received the disciplinary ticket. Given this fact, we fail to see how these references served to impeach Harris' testimony
 
 
 [7]
 Plaintiff called several of these individuals as adverse witnesses
 
 
 [8]
 Plaintiff claimed that he was still suffering severe headaches and stomach cramps at the time of trial in September, 1987. In October, 1986, plaintiff was transferred to a minimum security prison in Centralia, Illinois. At trial, Harris did not indicate that he had ever reported these problems to anyone at Centralia
 
 
 [9]
 Because of our disposition of the case we need not address the defendants' alternative argument that they are protected by the doctrine of qualified immunity
 
 
 [1]
 The majority's disposition of the case makes it unnecessary for it to reach the question of qualified immunity that is raised in rather perfunctory fashion in the appellees' brief. It is not at all clear that the issue is properly before us. See Beard v. Whitley County REMC, 840 F.2d 405, 408-09 (7th Cir.1988) (holding that we shall not consider an issue that is not adequately briefed in this court). Assuming that the issue is properly before us, I believe that the district court properly held that summary judgment was not appropriate because the claim of qualified immunity turned on a disputed issue of fact. See Wrigley v. Greanias, 842 F.2d 955 (7th Cir.1988)