**Patricia Ann HEMPHILL, Appellant,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellee.**

No. 91–7112.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 20, 1992.

Decided Jan. 15, 1993.

As Amended Jan. 15, 1993.

Thomas Fortune Fay was on the brief, for appellant.

Bruce P. Heppen, Asst. Gen. Counsel, Washington Metropolitan Area Transit Authority, with whom Robert L. Polk, Gen. Counsel, and Gerard J. Stief, Associate Gen. Counsel, Washington Metropolitan Area Transit Authority were on the brief, for appellee.

Before: RUTH BADER GINSBURG, SILBERMAN and WILLIAMS, Circuit Judges.

PER CURIAM:

It is the judgment of this court, in which all three judges concur, that the judgment of the district court be vacated and the case remanded for a new trial. As explained in the opinions of the three judges that follow, the "claims-minded-plaintiff" instruction given by the magistrate judge was improper.

RUTH BADER GINSBURG, Circuit Judge, concurring in the judgment:

Plaintiff-appellant in this vehicle accident case presents a sole issue for review by this court: whether the magistrate judge erred, reversibly, in submitting the case to the jury on a "claims-minded-plaintiff" instruction. Defendant-appellee, although requesting the instruction, did not contend that prior claims pursued by plaintiff were in any way fabricated. Absent proof of the falsity of prior claims, a "claims-minded-plaintiff" instruction is improper. Because a court should not indulge the assumption that the jury disregarded the charge in reaching its verdict, the judgment must be vacated and the case remanded for a new trial.

I.

The episode in suit occurred on the afternoon of July 14, 1989, as plaintiff Patricia Ann Hemphill drove her car out from the curb on the east side of 14th Street, just north of U Street, N.W., Washington, D.C. Struck by another vehicle, Hemphill next recalls rescuers attempting to remove her from her car. She was taken to Washington Hospital Center where she regained full consciousness. Hemphill alleged that her medical bills attributable to the July 14, 1989 accident exceeded $55,000.

Hemphill initially sued uninsured motorist Beverly Robinson, whose car struck Hemphill's, and Government Employees Insurance Company (GEICO), uninsured motorist carrier for Hemphill. Hemphill sued

Robinson because Robinson's car was the only other vehicle mentioned in the police traffic accident report. The police report records Robinson's statement that her car struck Hemphill's "due to [a] gas spill in the street."

After Robinson was served in a diversity suit commenced May 17, 1990, she told Hemphill's attorney that a Washington Metropolitan Area Transit Authority bus— a "Metrobus"—had cut out from the curb to the middle lane, in front of her, causing her to apply her brakes, skid, and strike Hemphill's car. Thereafter, on June 5, 1990, Hemphill amended her complaint to name Washington Metropolitan Area Transit Authority (WMATA) as a defendant. Before trial, Hemphill dismissed both Robinson and GEICO as defendants.

Hemphill, having scant recollection of the collision itself, relied on the testimony of Robinson in her endeavor to show WMATA's responsibility for the accident. Hemphill's own testimony largely concerned the extent of her injuries and their relationship to the July 14, 1989 occurrence. In that connection, both sides canvassed prior injuries suffered by Hemphill. Those injuries, as summarized in Hemphill's brief, were:

1961—Leg injury when struck by a motor vehicle while crossing street as a pedestrian;

1966—Lower back injury when her motor vehicle was rear ended;

1967—Cervical strain, no permanency, when her motor vehicle was struck from the front;

1969—Hit in the head by falling object at work, Dilantin prescribed for seizures;

1979—Criminally assaulted, fractured nose, perpetrator convicted;

1983—Cervical strain suffered in fall on Metrobus;

1983—Head injury in slip and fall in Giant Food store;

1988—Cervical strain when motor vehicle rear ended by drunk driver.

Brief of Appellant at 3. It also came out, though in considerably less detail, that Hemphill had pursued legal claims following some of these injuries.

Over Hemphill's objection, and in the portion of his charge concerning liability, the magistrate judge gave the "claims-minded-plaintiff" instruction WMATA requested:

> There has been evidence and testimony in this case that Ms. Hemphill, the plaintiff, has had prior accidents and prior injury claims and had claims settled. The court instructs you that in deciding upon any claim that might be in this case you should consider whether the plaintiff was merely unlucky or whether or not she is claims minded. And you're entitled to take into consideration the fact that although a negligent injury is not unusual, it is unusual for a person not engaged in a hazardous activity to suffer negligent injuries repeatedly within a short period of time and at the hands of different persons.
>
> Now, if you find that the plaintiff has proved by a preponderance of the evidence that the defendant was negligent, that they have carried the burden of proof on that issue, then you have to consider the issue of damages....

The jury returned a verdict for defendant.

## II.

WMATA grounded its request for the contested instruction on this circuit's decision in *Mintz v. Premier Cab Ass'n,* 127 F.2d 744 (D.C.Cir.1942) as "reaffirmed in *Evans v. Greyhound Corp.,* 200 A.2d 194 (D.C.1964) and *Manes v. Dowling,* 375 A.2d 221 (D.C.1977)." Brief for WMATA at 4. *Mintz* was a case in which "defendant's counsel conceded 'liability' "; "the sole issue was [plaintiff's] injury, if any." 127 F.2d at 744. *Mintz* upheld cross-examination and defense attorney comment on plaintiff's prior personal injury claims. No issue was raised in *Mintz* concerning the charge to the jury. The opinion does not indicate whether any "claims-minded" instruction was sought or given. We cannot know how the *Mintz* court would have evaluated the addition of a judicial voice in tune with the defense counsel's cross-examination.

*Evans* was decided at a time when this court was the final judicial arbiter on matters of District of Columbia law.[1] That case was submitted to the jury on both liability and damages. Relying exclusively on *Mintz,* the District of Columbia Court of Appeals upheld both cross-examination of the personal injury plaintiff on her prior claims and a "claims-minded-plaintiff" instruction. The cross-examination in *Evans* had elicited that the plaintiff "had a history of two previous claims for which she had received payments in settlement." 200 A.2d at 196. The terse 1964 *Evans* opinion sparely explained: "Under the authority of *Mintz* [citation and footnote omitted], an instruction was properly given directing the jury to take into consideration that it is unusual for a person not engaged in hazardous activities to suffer negligent injuries repeatedly within a short period and at the hands of different persons." *Id.*

The District of Columbia Court of Appeals, after it became responsible for the binding declaration of District of Columbia law, relied on *Mintz,* as carried over precedent, in the 1977 *Manes* decision.[2] In *Manes,* as in *Mintz,* "the accident's occurrence was conceded, and the only issue was the extent of plaintiff's injury." 375 A.2d at 223. The plaintiff herself had testified to subsequent accidents and claims. Based on the subsequent accident evidence, the trial court gave a "claims-minded-plaintiff" instruction. The District of Columbia Court of Appeals upheld the charge, citing *Mintz* as establishing the law "[i]n this jurisdiction." *Id.*

The *Mintz* decision is "of a certain age," and its broad reasoning has been undermined by later cases and commentary.

Controlling current authority—as embodied, most notably, in Federal Rule of Evidence 608(b)—recognizes that evidence of prior acts used to discredit a witness' testimony is often highly prejudicial and therefore should be permitted only when clearly probative of credibility. *See, e.g., Woodward & Lothrop v. Hillary,* 598 A.2d 1142, 1150 (D.C.1991) ("Under the Federal Rules of Evidence, as under the [D.C.] rule of *Sherer [v. United States,* 470 A.2d 732, 738 (D.C.1983), *cert. denied,* 469 U.S. 931, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984)], a witness may be impeached with [prior] acts ... if those acts are 'clearly probative of truthfulness or untruthfulness.' Fed.R.Evid. 608(b) (1989)."). Regarding prior mishaps and claims, the mere fact of their occurrence is today regarded as insufficiently probative of a plaintiff's credibility to warrant automatic admission. *See Outley v. City of New York,* 837 F.2d 587, 592 (2d Cir.1988) ("The charge of litigiousness is a serious one, likely to result in undue prejudice against the party charged, unless the previous claims made by the party are shown to have been fraudulent."); 1 McCormick on Evidence § 196, at 833–34 (John William Strong ed., 4th ed. 1992) ("[T]he judge, balancing probative value against prejudice, should admit [evidence of previous claims relating to similar accidents] only if the probability of coincidence seems negligible or if the proponent has distinct evidence of fraud." (footnotes omitted)).

To comport with more recent authority, specifically, the balancing required by the Federal Rules of Evidence, *see Outley,* 837 F.2d at 592 (emphasizing Rules 403 and 404(b)),[3] our 1942 *Mintz* opinion bears qual-

---

**1.** *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971) ("[With the passage by Congress of the District of Columbia Court Reform and Criminal Procedure Act, effective February 1, 1971, the District of Columbia Court of Appeals] became the highest court of the District of Columbia, *no longer subject to review by the United States Court of Appeals....*") (emphasis added).

**2.** *See M.A.P.,* 285 A.2d at 312 (stating that, as of February 1971, the D.C. courts' continuing respect for once binding (pre-February 1971) United

ed States Court of Appeals decisions on issues of local law became "a matter of internal policy").

**3.** Rule 403 states that evidence, although relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Rule 404(b) excludes evidence of other acts "to prove the character of a person in order to show action in conformity therewith." As suggested in the previous paragraph of the text, the court in *Outley* might also have looked to Rule 608(b) with similar result. Specifically, Rule 608(b), as an exception to Rule

ification. Plaintiff in this case does not challenge that decision root and branch. She does not contest inquiry on cross-examination into her prior mishaps and claims; indeed, she recognizes the legitimacy of those inquiries to probe whether the injuries she now asserts are attributable to the July 14, 1989 accident or to earlier events. She does challenge allowing the jury, as the magistrate judge's charge did, to infer *from the mere fact of prior claims* that those claims were dubious, and that the instant claim is suspect too. She persuasively maintains that the jury charge, which *Mintz* itself did not go so far as to endorse, may not be given, absent a showing of fraud in making other claims.

While the disposition ordered in the court's judgment is controlled by the reasoning codified in the Federal Rules of Evidence, the District of Columbia courts have not signaled that they would today embrace any different view.[4] Those courts have elaborated no rule of their own, but have up to now endeavored to follow the precedent we set for them in *Mintz*. That decision, for the reasons just explained, is properly contained—when no charge of fabrication is made—to cover only cross-examination relevant to the cause and extent of a claimant's injuries.

### III.

WMATA urges that, even if we hold, as we do, that the "claims-minded-plaintiff" instruction constituted error, "it was harmless error, which does not require a new trial." Brief for WMATA at 11–12. The disputed instruction, WMATA now pleads, never came into play, for the jury rendered a defendant's verdict, which meant its members disbelieved Robinson's account of the accident and therefore found WMATA not liable. The "claims-minded-plaintiff" instruction thus became academic, WMA-

TA maintains, because it "relate[d] solely to the amount of damages rather than to the question of liability." *Id.* at 12.

The magistrate judge, however, did not so instruct the jury. He carefully constructed his charge first to cover liability, then to move on, clearly and discretely, to the issue of damages. *See supra* p. 573. He apparently thought the charge relevant to Hemphill's truthfulness in all respects, including the integrity of her claim of WMATA's negligence. We should not indulge the assumption that the jury failed to heed what the magistrate judge charged and either disregarded the "claims-minded-plaintiff" instruction or moved the instruction to a place where it would do no harm. WMATA itself recognized that the issue of liability in this case "was quintessentially a matter for jury resolution," Brief for WMATA at 4, not one properly resolved by judgment as a matter of law (formerly, directed verdict or judgment n.o.v.). *See* Fed.R.Civ.P. 50. It is not the prerogative of an appellate reviewer to label "harmless" an extra weight the trial judge improperly placed on the defendant's plate on a matter thus falling within the jury's domain.

Because the "claims-minded-plaintiff" instruction should not have been given, the case must be remanded for a new trial.

SILBERMAN, Circuit Judge, concurring in the judgment:

Although I reach the same result as Judge Ginsburg (and agree with her that the error cannot be thought harmless), I think that *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires us to decide the case under the Federal Rules of Evidence. We there-

---

404(b), allows a judge to permit inquiry on cross-examination into specific instances of a witness' conduct only "if probative of truthfulness or untruthfulness."

4. The District of Columbia Court of Appeals has already retreated from one of the prime applications of the "claim-minded" idea *Mintz* specifically endorsed, i.e., the cross-examination of the

complaining witness in a sexual assault case regarding other sexual assault charges made by the witness. *Compare Roundtree v. United States,* 581 A.2d 315, 325 (D.C.1990) (upholding trial court's refusal to allow such cross-examination) *with Mintz,* 127 F.2d at 745 ("[T]he prosecuting witness in a rape case may be asked whether she has made similar charges against other men...." (footnote omitted)).

fore should avoid any discussion of D.C. law, which we should leave to our colleagues across the street to modify if they so wish. Under *Erie*, of course, the substantive law of the forum state binds a federal court sitting in diversity jurisdiction, *see Erie*, 304 U.S. at 78–80, 58 S.Ct. at 822–23, but federal law governs in procedural matters. *See, e.g., Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *see also* C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE §§ 4508, 4512 (1982).

I agree with Judge Ginsburg that the claims-minded instruction can be nothing other than an evidentiary rule relating to "evidence of prior acts used to discredit a witness' testimony." Opinion of Judge Ginsburg at 6. As the District of Columbia Court of Appeals stated in *Manes v. Dowling*, 375 A.2d 221 (D.C.1977), "the purpose of a claim-minded-plaintiff instruction is to allow a jury to 'discount or disregard testimony which runs counter to normal experience.'" *Id.* at 223 (quoting *Mintz v. Premier Cab Ass'n, Inc.*, 127 F.2d 744 (D.C.Cir.1942)). The instruction certainly could not be thought of as an affirmative defense to liability (whatever common sense such a rule might embody). We have previously made clear that an evidentiary rule such as this is part of the procedural, not substantive, law of the District of Columbia and that it is displaced in our court by the Federal Rules of Evidence. *See Ealy v. Richardson–Merrell, Inc.*, 897 F.2d 1159 (D.C.Cir.1990); *Richardson v. Richardson–Merrell, Inc.*, 857 F.2d 823 (D.C.Cir.1988).

Under Rule 608(b) of the Federal Rules, prior acts used to undermine a witness' credibility must be "probative of truthfulness or untruthfulness." FED.R.EVID. 608(b). The commentary to Rule 608 even refers to this requirement as a "safeguard" that limits the inquiry into prior acts. *Id.* Notes of Advisory Committee on 1972 Proposed Rules. As Judge Ginsburg points out, mere evidence of prior claims without any evidence that the claims were false is not probative of truthfulness. *Cf.*

*Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir.1988).

STEPHEN F. WILLIAMS, Circuit Judge, concurring in the judgment:

I agree with Judge Silberman's view as to why it was error for the court to give the "claims-minded-plaintiff" instruction. Because the charge goes only to the credibility of witnesses and is procedural, the federal court should apply federal law—here the judgment implicit in Rule 608(b) of the Federal Rules of Evidence—not the District of Columbia rule.

I hesitate to reverse, however, because the likelihood that the error affected the outcome seems remote. The sole witness identifying misconduct by a Metrobus was Beverly Robinson, the uninsured motorist whose car struck Hemphill's. As recorded in a police report of the accident, Robinson at the time made no mention of a bus, much less one lurching into her lane. Instead she had evidently chalked the collision up to a "gas spill in the street". Once sued by Mrs. Hemphill, however, Mrs. Robinson contacted Hemphill's attorney and explained that a Metrobus forced her to hit Hemphill. Shortly after this new recollection, Hemphill named WMATA as a defendant and dropped Robinson from the suit. Rose Robinson, Beverly's sister and passenger at the time of the accident, corroborated the existence of the bus but *not* the testimony that it cut their car off or forced Beverly Robinson to slam on her brakes. On this evidence, I find it hard to believe that the presence of the erroneous charge played the slightest causal role in producing in the jury verdict exonerating WMATA. In the interests of having the case yield a clear resolution of the *Erie* issue, however, I defer to my colleagues' belief that the error in the charge was not harmless and join the judgment.