Kim GASTINEAU, Plaintiff–Appellant,

v.

**FLEET MORTGAGE CORPORATION,** Defendant–Appellee.

No. 96–3145.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1997.

Decided Feb. 23, 1998.

---

Scott Quick, Indianapolis, IN, Margaret M. Landers (argued), Indianapolis, IN, for Plaintiff–Appellant.

Robert L. McLaughlin (argued), Michael Rabinowitch, Wooden & McLaughlin, Indianapolis, IN, for Defendant–Appellee.

Before FLAUM, EASTERBROOK, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Kim Gastineau sued his former employer Fleet Mortgage Corporation and three of its employees for sexual discrimination under Title VII. The district court dismissed the individual defendants. Gastineau appeals that decision, as well as the district court's decisions not to admit certain evidence and not to grant relief from the judgment. We affirm.

## I. HISTORY

Kim Gastineau worked as a loan originator at Fleet Mortgage Company ("Fleet") from September 1991 until Fleet terminated his employment in November 1992. Loan originators at Fleet solicit mortgage business and take loan applications. Loan originators work on commission, which they receive only when a loan closes. After taking a loan application, loan originators hand the application over to a loan processor who verifies the information in the application and obtains any needed documentation. Fleet assigned Katrina Johnson to process Gastineau's loan applications.

Gastineau claims that during his year at Fleet, Johnson sexually harassed him. Gastineau claims Johnson would frequently wear low-cut blouses and short skirts and sit on his desk to expose her breasts and underwear to him or put her foot in his crotch. He also claims that she frequently called him at home to discuss romantic or sexual matters and would often leave him voice mails or answering machine messages of a similar nature. Gastineau alleged that Johnson refused to process his loan applications unless he agreed to have sex with her. Johnson denied ever harassing Gastineau; rather, she asserts it was he who pursued a relationship with her.

Gastineau allegedly complained on several occasions to the Indianapolis branch manager, Julie Trimble, about Johnson's behavior. Gastineau alleged that on November 16, 1992, Trimble called Gastineau into her office and handed him a memorandum (the "Trimble Memorandum") which read:

To: Dan Negele
From: Julie Trimble
Date: November 16, 1992
Re: Kim Gastineau

Was advised by Kim that Katrina continues to harass him in the office. I know that it goes on, she obviously has a thing for him she wont [sic] let go. I'm tired of hearing him complain about it. I think we should get rid of him, it's easier to hire a new [loan originator] than find a processor right now.

Talk to you about it on Friday.

Plaintiff's Tr. Exh. 1, *Gastineau v. Fleet Mortgage Corp.*, 884 F.Supp. 310 (S.D.Ind. 1994). Gastineau alleged that he also received a copy of this memorandum in the mail from Fleet's corporate headquarters in January 1993. While Trimble admitted at trial that the memorandum appears to bear her signature, she denied ever writing it, signing it, or seeing it before the beginning of this litigation. She also denied that Gastineau ever complained to her, verbally or in writing, about sexual harassment in the office.

Fleet's regional manager Dan Negele discharged Gastineau over the telephone on November 20, 1992. Gastineau allegedly told Negele during that conversation that Johnson was harassing him. Negele denied that Gastineau ever complained to him about sexual harassment in the office. Furthermore, Negele denied ever seeing the Trimble Memorandum before the litigation, even though it was addressed to him.

Gastineau experienced other problems during his employment at Fleet. In July 1992, Fleet asked all loan originators to sign new compensation agreements. Gastineau objected. In September 1992, Fleet began requiring that loan originators match refinance loans with purchase loans. Gastineau also objected to this change.

Gastineau talked at the office about lawsuits he had filed against former employers. He hinted that he might sue Fleet as well. On one occasion, he walked out of Fleet's office announcing he was going to see his attorney. On another occasion, he brought a gun to work. This line of discussion and the gun incident prompted Trimble to keep a diary on Gastineau in case he sued Fleet.

Gastineau did in fact sue Fleet claiming it violated Title VII, which prohibits sexual discrimination in the workplace. He also sued Trimble, Negele, and Johnson individually. The individual defendants moved to dismiss the counts against them, and the district court granted that motion.

Gastineau testified that he suffered severe emotional distress due to the sexual harass-

ment and his unfounded discharge. Three psychiatric experts testified that Gastineau suffered various psychological harms resulting from the harassment at Fleet. However, trial testimony revealed that Gastineau never told these experts about unsavory events with his former employers other than Fleet or the lawsuits against those employers.

One of the conflicts with a former employer, Railroadmen's Federal Savings & Loan ("Railroadmen's"), revolved around a pay dispute. Gastineau claims that a contract between him and Railroadmen's (the "Railroadmen's Contract") specifies certain terms of compensation with which Railroadmen's now refuses to comply. In fact, the Railroadmen's agent whose signature appears at the bottom of the contract denies making this contract with Gastineau. He agrees that his signature appears on the document, but he is unable to explain how it arrived there. Fleet introduced evidence of the Railroadmen's Contract and the possibility that it is a fraudulent document to show Gastineau's intent and motive of using fraudulent documents in litigation with his employers.

The jury found for Fleet on all counts, and the district court entered judgment for Fleet. Thirty-one days later, Gastineau filed a *pro se* motion to Correct Errors and to Set Aside Jury Verdict, which the district court treated as a motion for relief from judgment under Fed.R.Civ.P. 60(b). In this motion, Gastineau brought to the court's attention newly discovered evidence and allegations of misconduct by Fleet's witnesses and counsel. The district court denied Gastineau's motion. Gastineau appeals to this Court.

## II. ANALYSIS

Gastineau raises three issues on appeal. First, he questions the district court's decision to dismiss the individual defendants. Second, he argues that the court erred in admitting evidence of his lawsuits against other employers and of the Railroadmen's Contract. And third, he asserts that the district court erred in denying his motion for relief from judgment.

### A. The Individual Defendants

Gastineau originally named as defendants Fleet, Johnson, Trimble, and Negele. He asserted that the individual defendants, as well as Fleet, should be liable under Title VII as "employers" as that term is defined in the statute. After a thorough analysis, the district court concluded that although the Seventh Circuit had not yet determined whether individual employees can be liable under Title VII, the clear trend is to interpret Title VII not to impose liability on individual employees. As such, the district court granted the individual defendants' motion to dismiss for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

"We review a district court's decision to grant a motion to dismiss under Rule 12(b)(6) *de novo*, accepting the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff." *Mallett v. Wisconsin Div. of Vocational Rehabilitation*, 130 F.3d 1245, 1248 (7th Cir.1997). "[A] complaint [or part of a complaint] should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

The district court concluded that Gastineau could prove no facts making the individuals liable. The court recognized that the covered entity under Title VII is the "employer," defined as "a person engaged in an industry affecting commerce ... and *any agent* of such a person." 42 U.S.C. § 2000e(b) (emphasis added). The district court noted and followed the current trend in other courts to interpret the statute not as imposing personal liability on agents, but as invoking the doctrine of *respondeat superior* to make employers responsible for the actions of their agents. *See Gastineau*, 884 F.Supp. at 313. The court correctly anticipated our ruling on this precise issue in an unrelated case.

In *Williams v. Banning*, 72 F.3d 552 (7th Cir.1995), a female employee sued her male supervisor for sexual harassment under Title

VII. The district court granted the supervisor's Rule 12(b)(6) motion. We affirmed that decision, holding that while Title VII's definition of "employer" does include the term "agent," Congress intended only for employers to be liable for their agent's actions under the traditional *respondeat superior* doctrine, not for agents to be personally liable. *See id.* at 554. Williams controls the case before us, and the district court correctly dismissed the individual defendants as not covered by Title VII.

### B. 404(b) Evidence

■ Gastineau filed a motion in limine requesting that Fleet be forbidden from presenting any evidence regarding the Railroadmen's Contract or other lawsuits that Gastineau has brought against his former employers. The district court denied the motion with regard to the other lawsuits. It also denied the motion with regard to the Railroadmen's Contract, but provided that Fleet may be allowed to present evidence of the Railroadmen's Contract only if Gastineau offers into evidence the Trimble Memorandum. Gastineau argues that the district court erred in admitting the evidence. We review evidentiary decisions for abuse of discretion. *See United States v. Connelly*, 874 F.2d 412, 415 (7th Cir.1989). "Discretion, when exercised, will rarely be disturbed." *United States v. Beasley*, 809 F.2d 1273, 1279 (7th Cir.1987).

### 1. The Railroadmen's Contract

■ At trial, Gastineau introduced the Trimble Memorandum, which he suggests Trimble gave to Negele. If authentic, it shows rather conclusively that Fleet intended to fire Gastineau because he was complaining of being sexually harassed. Trimble denied writing the memorandum or seeing it before this litigation ensued. Thus, the authenticity of the memorandum took center stage in the case. To show that this memorandum is fraudulent, Fleet introduced evidence under Rule 404(b) of another similar document that Gastineau may have fraudulently created.

Fleet introduced evidence of a contract which appeared in another of Gastineau's lawsuits, the "Railroadmen's Contract." The contract contained employment terms very favorable to Gastineau. The other party to the contract, John Dee, denied ever seeing the contract before the litigation, although he admits that his signature appears on the document. In the Railroadmen's case, Gastineau allegedly rediscovered the contract on the eve of litigation. Because of the similarities in circumstances surrounding the Railroadmen's Contract and the Trimble Memorandum, the district court admitted evidence of the Railroadmen's Contract "to show motive, common scheme or plan, intent and knowledge under Rule 404(b)." Stipulated Order Amending Rulings on Motions in Limine, *Gastineau v. Fleet Mortgage Corp.*, 884 F.Supp. at 310. The court also instructed the jury not to consider it as evidence of Gastineau's character or his propensity to act in conformity with a trait of character, but only to consider the evidence as to Gastineau's credibility, motive, interest, knowledge, common scheme and plan.

■ We agree that the Railroadmen's Contract satisfies Rule 404(b). Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Fed.R.Evid. 404(b). In this Circuit, evidence of prior acts is admissible if it meets a four-part test:

1. The evidence must be directed toward establishing something at issue other than a party's propensity to commit the act charged;

2. The other act must be similar enough and close enough in time to be relevant to the matter at issue;

3. The evidence must be such that the jury could find the act occurred and

the party in question committed it; and

4. The prejudicial effect of the evidence must not substantially outweigh its probative value.

See, e.g., Harris v. Davis, 874 F.2d 461, 464 (7th Cir.1989). As to the first part of the test, evidence about the Railroadmen's Contract tends to establish that Gastineau has a common scheme or plan in disputes with his former employers-creating false documents in anticipation of litigation. The evidence also shows Gastineau's motive in creating false documents as revenge against former employers and the hope of monetary gain. We recognize that the evidence could also suggest the impermissible inference that Gastineau created a false document once so he likely created another one, but "[w]hen the same evidence has legitimate and forbidden uses, when the introduction is valuable yet dangerous, the district judge has great discretion." Beasley, 809 F.2d at 1278.

Second, the Railroadmen's Contract is indeed quite similar temporally and otherwise to the Trimble Memorandum. In both cases the allegedly false document appeared on the eve of litigation; the documents are highly damaging to the employer's case; the putative author denies writing the document or seeing it before, even though each author's signature appears on the document; Gastineau claims to have received a copy of each document in the mail; and the documents surfaced in discovery within a month of each other. Third, a jury could reasonably find that Gastineau forged the Railroadmen's Contract as well as the Trimble Memorandum. Fleet presented sufficient evidence of the suspicious character of each document that a jury could reasonably believe the documents were fraudulently created with an eye toward litigation. And fourth, the probative value of the Railroadmen's Contract, given the central position of the Trimble Memorandum in the case, outweighed the admittedly prejudicial effect. We do not require that there be no prejudicial effect, only that the prejudice not be unfair. And we accord the district court great deference in this balance. See United States v. Brooks, 125 F.3d 484, 500 (7th Cir.1997). It was not an abuse of discretion to admit the evidence.

### 2. The Prior Lawsuits

■ Gastineau also submits that the district court erred in denying his motion in limine and subsequent objections to Fleet's presenting evidence that Gastineau has sued three of his former employers. Gastineau requested that Fleet not be permitted to introduce evidence of three lawsuits against former employers, one of those being the lawsuit centered around the Railroadmen's Contract. Gastineau argued that Fleet wanted to introduce the evidence only to show Gastineau's litigiousness. Fleet countered, and the district court agreed, that the evidence tended to establish: Trimble's motive in keeping her diary of events surrounding Gastineau's employment; Gastineau's vindictive state of mind regarding his employers; and Gastineau's mental state for which he seeks damages from Fleet and the fact that he did not reveal these prior lawsuits to the psychologist who examined him for the current suit. We again review this decision for an abuse of discretion, see Connelly, 874 F.2d at 415, and we return to our four-part test for admissibility under Rule 404(b), see Harris, 874 F.2d at 464.

First, we require that the evidence tend to establish something other than the party's propensity to commit the act charged. The evidence here does tend to establish something other than Gastineau's propensity to sue his employers. It goes to explain that Trimble kept a diary on events surrounding Gastineau because she anticipated a lawsuit against Fleet and perhaps herself. The evidence also casts doubt on the credibility of Gastineau's claim for damages based on depression caused by the trauma he suffered at Fleet. When Gastineau was evaluated by psychologists, he failed to mention that he related poorly to his previous employers as well as to Fleet. And, as we discussed in the previous section, the evidence tends to show Gastineau's modus operandi of creating fraudulent documents in anticipation of litigation against his employers.

Keeping in mind this first requirement, that the evidence must tend to show something other than a plaintiff's tendency to sue, we note the Second Circuit has addressed the propriety of admitting 404(b) evidence of other lawsuits against the litigious or "claims minded" plaintiff. *See Outley v. City of New York*, 837 F.2d 587 (2d Cir.1988); *cf. Hemphill v. Washington Metropolitan Area Transit Auth.*, 982 F.2d 572, 573 (D.C.Cir.1993) (per curium) (Ginsburg, J., concurring) (holding it was error for the district court to instruct the jury that it could consider whether plaintiff was "claims minded" or "merely unlucky"). In *Outley*, the plaintiff Outley sued the City of New York on charges of policy brutality. The City attempted to portray Outley as a perpetual litigant by introducing evidence of his four other lawsuits against the City. *See Outley*, 837 F.2d at 592. The City's asserted purpose in introducing that evidence was impeachment: the City intended to introduce evidence from Outley's *in forma pauperis* applications in the other cases as prior inconsistent statements. However, the Second Circuit found the City's purpose to be the one forbidden by Rule 404(b)—showing Outley to have a litigious character. The Second Circuit reached this conclusion in part because of the City's opening statement, "The plaintiff in this matter, Willie Outley, is a perpetual litigant." *Id.* The Second Circuit did not foreclose the possibility of using evidence of prior litigation in a case where that evidence is truly used for one of the legitimate purposes suggested by Rule 404(b), such as when "a party has filed a series of fraudulent lawsuits and there is substantial evidence that the prior lawsuits amounted to a fraudulent pattern." *Id.* at 594. We think the Second Circuit would agree with us that in Gastineau's case, Fleet has presented legitimate reasons for wanting to introduce evidence of prior litigation.

As to the second part of our test, the other lawsuits are similar enough and close enough in time to be relevant to the current suit. Gastineau filed two of the suits in 1990, and he filed the suit concerning the Railroadmen's Contract in 1995. All three suits were filed against former employers. Although it appears that the current suit is the only one involving a claim of sexual harassment, all of the suits, including the current one, involve claims that the employer failed to comply with terms of employment. The suits are proximate enough in time and subject matter to be relevant.

The third part of our test requires that the jury must be able reasonably to find that the prior events occurred. These prior lawsuits were evidenced by the pleadings and by testimony-certainly adequate for this purpose.

Fourth, unfair prejudice must not substantially outweigh the probative value of the prior events. We accord the trial court exceptional deference in this calculation. *See Brooks*, 125 F.3d at 500. The trial court did not abuse its discretion in admitting evidence of the fact of Gastineau's prior lawsuits against other employers.

### C. Post-Trial Rulings

■ After trial, Gastineau filed a *pro se* Motion to Correct Errors and to Set Aside Jury Verdict, which the court treated as a motion for relief from judgment under Fed. R.Civ.P. 60(b). He argued in his motion that Trimble backdated documents used in evidence, that Trimble committed perjury, that Fleet's counsel denied him discovery, and that he has discovered new evidence. The district court denied his motion because the matters he raised were collateral, vague, and unsupported. Gastineau makes the same arguments on appeal. We reject them.

For the foregoing reasons we AFFIRM.