In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1892

Anthony C. Mathis,

Plaintiff-Appellee,

v.

Phillips Chevrolet, Inc.,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 2723--Warren K. Urbom, Judge./*

Argued December 4, 2000--Decided October 15, 2001


   Before Flaum, Chief Judge, and Diane P.
Wood and Williams, Circuit Judges.

   Diane P. Wood, Circuit Judge.  Anthony
Mathis is a 59-year-old African-American
man with over 24 years of experience in
car sales. Notwithstanding that
background, when he applied for a job as
a salesman at Phillips Chevrolet, Inc.
("Phillips"), Phillips never even
interviewed him. Instead, it hired seven
younger, white salespeople--a move that
prompted Mathis to sue the dealership for
age and race discrimination. A jury found
for Phillips on the race discrimination
claim, but it found for Mathis on the age
discrimination claim and awarded him
$50,000 in compensatory damages. The jury
also found that the dealership's
violation of the Age Discrimination in
Employment Act, 29 U.S.C. sec. 621 et
seq., was willful, and so the trial court
assessed an additional $50,000 in
liquidated damages. Phillips has
appealed, arguing that the district court
erred in excluding certain evidence and
that the evidence did not justify sending
the question of willfulness to the jury.
We affirm the judgment of the district
court.

I

   According to Mathis's trial testimony,
in May 1996, Mathis applied for a sales
job at Phillips Chevrolet in response to

a newspaper ad. No one at Phillips was available to interview him at the time he applied, and so he left his application with the cashier. A few weeks later he returned, not having heard from Phillips, and left a second application with the cashier. The application form asked for the date of his discharge from the military; Mathis indicated that he was discharged in May 1959. Mathis's theory at trial was that this information alerted Phillips to the fact that he was well over 40 years old. Phillips never interviewed Mathis for the sales position, but after he applied, it hired seven new salespeople, all younger than Mathis.

Although Phillips's managers testified that they never received Mathis's application, the jury did not believe them. Furthermore, Mathis presented evidence that suggested the managers were disposed to discriminate on the basis of age. Mathis established at trial that Jamie Pascarella, the general manager of Phillips and the person with ultimatehiring authority at the dealership, often noted the ages of employment applicants by hand on their applications, in a section of the application that he admittedly used to make notes of information he considered relevant to his hiring decision. Pascarella testified that he was not aware that it was illegal to consider age in making hiring decisions. A second Phillips manager, Henry Rhodes, admitted at trial that he looked for applicants who were "bright, young, and aggressive."

Phillips's basic point on appeal is that the jury's credibility determination was made on incomplete evidence, because of a key evidentiary ruling the district court made before the trial. Phillips had vigorously denied that it had ever received Mathis's application. Several Phillips managers who were involved in the hiring process testified that if they had seen Mathis's application, they would have interviewed him. Phillips's theory of the case was that either Mathis was lying about having dropped off applications with a Phillips cashier, or, if Mathis was not lying, then the applications had somehow been misplaced before anyone with hiring authority saw them.

In order to bolster its theory, Phillips tried to introduce evidence that Mathis had sued at least six other car dealerships for discrimination after they failed to hire him during roughly the same time period as his application to Phillips. According to an offer of proof Phillips made just before the trial began, there were significant irregularities in Mathis's applications at these other dealerships. In one case, when the dealership offered Mathis an interview, Mathis left and never returned. In three other cases, the dealership alleged that Mathis filled out an application but took it home with him and never submitted it. In other cases Mathis lied on his applications. According to Phillips, although Mathis had worked as a car salesman for many years, his career had deteriorated in recent years. In the late 1980's and early 1990's, Mathis's sales had diminished considerably, and he had become increasingly belligerent and even violent towards co-workers. His last several jobs had been short-lived, and none of his former employers was willing to act as a reference.

It was Phillips's theory that Mathis blamed his misfortunes on a conspiracy among Chicago-area car dealerships and that, as a result, Mathis had set out to harass members of the Chicago Automobile Trade Association by manufacturing false discrimination claims against them. As part of his plan, Phillips argued, Mathis took a Phillips application home and filled it out, but never returned the completed application to Phillips. After several weeks, he filed this discrimination claim, using a copy of the supposed application as evidence that he applied to Phillips but was not interviewed. Phillips sought to introduce evidence of Mathis's improper applications and ensuing lawsuits against other dealerships to show that the supposed applications to Phillips were part of Mathis's plan or scheme to attack car dealerships.

In response to Phillips's pretrial offer of proof and Mathis's motion in limine to exclude this evidence, the district court found that Phillips's evidence of the other lawsuits seemed to be merely "an effort to show bad character on the part of the plaintiff." Noting that the

parties were not there to judge Mathis's motive for filing the lawsuit, the court held that the evidence would not be admitted to show that Mathis was litigious or that he had a "campaign against car dealerships," although the court did allow Phillips to introduce the lies on Mathis's other applications for the purpose of attacking his credibility on cross-examination. After the judge's pre-trial ruling, Phillips did not offer (or try to offer) any evidence of the prior lawsuits during the trial. After a three-day trial, the jury found for Mathis on his age discrimination claim and awarded $50,000 in compensatory damages. In answers to special interrogatories, the jury found that Mathis had applied to Phillips and that Phillips's violation of the ADEA was willful.

II

Phillips's primary argument on appeal is that the district court erred in excluding the evidence of Mathis's lawsuits against other car dealerships. As an initial matter, we must determine whether Phillips properly preserved this issue for appeal. Although Phillips brought its evidence of Mathis's other lawsuits to the attention of the court in various pre-trial motions, it did not seek to introduce the evidence at trial. In Wilson v. Williams, 182 F.3d 562, 565–67 (7th Cir. 1999) (en banc), we held that, although a district court judge's "definitive" pre-trial ruling on the admissibility of evidence adequately preserves the issue for appeal, if the district court indicates that a final ruling must await developments at trial, then the party must offer the evidence at trial in order to preserve the issue for appeal. Following that holding, Mathis argues that the district court in this case never made a definitive pre-trial ruling on the admissibility of testimony about his applications to and lawsuits against other car dealerships. It is true that the district court's first pre-trial ruling on this question denied Mathis's motion in limine to exclude the evidence. At that time, the district court ordered that specific rulings on the admissibility of the evidence would have to await an offer of proof at trial. If this were all that had happened, we would agree with Mathis that the district court

never made a definitive ruling on the admissibility of Phillips's proffered evidence.

Other indicia, however, point to the conclusion that the district court had made up its mind not to admit the evidence--at least not for the purposes for which Phillips wanted it admitted. Even in its order denying Mathis's motion in limine, the district court stated that "[i]f the proposed evidence is designed primarily to show that the plaintiff is a litigious person or has a campaign against car dealerships, I shall forbid the use of that testimony." Phillips raised this potential use for the evidence again on the morning of the trial by presenting the district court with a lengthy offer of proof detailing the evidence and stating Phillips's belief that it was admissible as evidence of "plaintiff's intent, motive, scheme, plan, design, bias, and motivation for attacking the automobile industry." In ruling on this portion of the offer of proof, the district court stated: "[I]t gives every impression of being an effort to show bad character on the part of the plaintiff. And the rules clearly specifically prohibit that. . . . Although [defense counsel] argues that Phillips Chevrolet is just one in a long line of victims, that's not sufficient to bring into evidence." At the same time, the district court ruled that the evidence could come in for other purposes, such as to attack Mathis's credibility, and Phillips did introduce some of it for that purpose. When the district court's rulings are considered together, it is clear that the court ruled definitively that Phillips would not be permitted to introduce evidence of Mathis's other applications and lawsuits to demonstrate a plan or scheme to harass car dealerships. This is the only use of the evidence that Phillips addresses in this appeal, and we find that the issue was adequately preserved.

We therefore turn to the merits of Phillips's appeal. Under Rule 404(b), evidence of Mathis's applications to and lawsuits against other dealerships would not have been admissible to show Mathis's propensity to file discrimination lawsuits or to suggest that, because Mathis had lied about applications in the

past, he was likely to be doing so in this case. Nonetheless, such evidence may have been admissible for other purposes, such as proof of a plan, scheme, or modus operandi. Fed. R. Evid. 404(b). This circuit has developed a four-part test to determine whether evidence of prior acts is admissible: "(1) the evidence must be directed toward establishing something at issue other than a party's propensity to commit the act charged; (2) the other act must be similar enough and close enough in time to be relevant to the matter at issue; (3) the evidence must be such that the jury could find that the act occurred and the party in question committed it; and (4) the prejudicial effect of the evidence must not substantially outweigh its probative value." Gastineau v. Fleet Mortgage Co., 137 F.3d 490, 494-95 (7th Cir. 1998). In this case, the pattern of Mathis's false applications to the other dealerships was very similar to what Phillips alleged occurred in this case, and the other applications and suits all occurred around the same time as Mathis's application to and suit against Phillips. Therefore, Phillips's proffered evidence satisfied the second prong of the test. The district court found that Phillips's proffered evidence was not relevant to establish anything other than Mathis's propensity to file possibly false lawsuits and that, even if the evidence did have some marginal relevance, its probative value was outweighed by the danger of unfair prejudice inherent in a charge of litigiousness. We review the district court's decision to exclude the evidence for abuse of discretion, giving great deference to the district court's balancing of the probative value of the evidence against its possible prejudice. Gastineau, 137 F.3d at 495.

Bearing these standards in mind, to the extent the district court ruled that the evidence of Mathis's prior lawsuits was not relevant to show anything other than a propensity to file baseless discrimination suits, we cannot agree with the district court's assessment. Although evidence of Mathis's other lawsuits could have been used for the forbidden purpose of suggesting that because Mathis had filed frivolous discrimination claims in the past, he was likely doing so again in this case, it could also have been used (with a proper limiting instruction) to show that Mathis

was engaged in a plan or scheme to harass Chicago-area car dealerships, and that his methods or modus operandi in the prior suits were very similar to the approach he employed in this case.

But the district court's finding was not only that the relevance of the evidence was questionable, but also that any relevance the evidence had was outweighed by the prejudice the evidence would cause Mathis. The district court's concern was a reasonable one. As the Second Circuit has noted, "a plaintiff's litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant." Outley v. City of New York, 837 F.2d 587, 592 (2d Cir. 1988); accord Gastineau, 137 F.3d at 496. Although both the Second Circuit in Outley and this court in Gastineau recognized that the danger of unfair prejudice from a charge of litigiousness might be minimized if the defendant could show that the plaintiff had a history not merely of filing numerous lawsuits, but of filing fraudulent ones, see Gastineau, 137 F.3d at 496; Outley, 837 F.2d at 592, the merits of Mathis's prior suits were contested here. Managers from the other dealerships would have testified that Mathis fabricated the prior claims, but Mathis disputed those allegations, and the district court was understandably reluctant to plunge into a series of mini-trials on the merits of each of the prior suits. Ultimately, the district court was faced with an offer of evidence that had some permissible uses but that could also have given rise to the impermissible inference that, because Mathis was given to filing frivolous lawsuits, the jury should not credit his claims in this suit. When "the same evidence has legitimate and forbidden uses, when the introduction is valuable yet dangerous," the district court has great discretion in determining whether to admit the evidence. United States v. Beasley, 809 F.2d 1273, 1278 (7th Cir. 1987). The district court acted within the scope of that discretion, and we will not disturb its judgment.

III

Phillips also contends that, even if the jury properly awarded compensatory damages against it, the evidence was

insufficient to support the jury's determination that its violation of the ADEA was willful, and thus the district court should not have assessed liquidated damages. It made that point before the district court in a motion for judgment as a matter of law on the issue of willfulness, which the court denied. We will reverse that decision only if the evidence presented at trial, combined with all reasonable inferences that may be drawn from it and viewed in the light most favorable to Mathis, was insufficient to support the jury's determination. Molnar v. United Tech. Otis Elevator, 37 F.3d 335, 337 (7th Cir. 1994).

Under the ADEA, courts are required to assess liquidated damages in the same amount as the compensatory damages if the employer's violation of the statute was "willful." 29 U.S.C. sec. 626(b). A violation is considered "willful" if "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Hazen Paper Co. v. Biggins, 507 U.S. 604, 614 (1993), cited with approval in Kolstad v. American Dental Ass'n, 527 U.S. 526, 537 (1999) (applying similar standard for punitive damages under Title VII). Once a plaintiff demonstrates that the employer's conduct was willful, the plaintiff need not additionally show that the employer's conduct was outrageous, or provide direct evidence of the employer's motivation. Hazen Paper, 507 U.S. at 617. A defendant's negligent mistake concerning the lawfulness of her conduct does not suffice to make that conduct "willful," but a reckless mistake, in the criminal law sense of indifference to whether the conduct violates the law, does. Price v. Marshall Erdman & Assoc., 966 F.2d 320, 324 (7th Cir. 1992).

Phillips makes several arguments why its conduct in this case should not have been considered willful. The problem is that many of these arguments are nothing more than a renewed attack on the finding that Phillips violated the ADEA in the first place, rather than reasons for rejecting the finding that the established violation was willful. For example, Phillips argues that, even assuming Mathis dropped off the application as he said he did, there was no direct evidence that anyone with hiring authority

atPhillips ever saw it. But this went to the question of whether anyone at Phillips ever made a conscious decision not to interview Mathis because of Mathis's age; the jury necessarily decided that it did make such a decision when it found Phillips liable. Phillips has not challenged the sufficiency of the evidence that it violated the ADEA, and so it has conceded that the jury reasonably could have found that someone at Phillips saw the application and decided not to interview Mathis. Similarly, Phillips argues that the jury could not have found that its violation of the ADEA was willful because Mathis could not show which manager at Phillips made the decision not to interview Mathis. As the Court in Hazen Paper made clear, however, the jury was free to infer willfulness from the circumstances of the case. Mathis was not required to provide direct evidence of discriminatory intent. Hazen Paper, 507 U.S. at 617.

   With its violation of the ADEA unchallenged, Phillips offers very little reason to suggest that the violation was not willful. Phillips never raised any suggestion that, if it did have a discriminatory policy, the policy was justified because the age requirement was a bona fide occupational qualification or fell under a statutory exception to the ADEA. Compare Hazen Paper, 507 U.S. at 616. Phillips's general manager did testify that he was not aware that it was illegal to discriminate on the basis of age, but as this circuit has held, leaving managers with hiring authority in ignorance of the basic features of the discrimination laws is an "extraordinary mistake" for a company to make, and a jury can find that such an extraordinary mistake amounts to reckless indifference. See Price, 966 F.2d at 323-24. Finally, Phillips notes that its employment applications stated that the ADEA "prohibits discrimination on the basis of age with respect to individuals who are at least 40 years of age" and argues that this boilerplate proves Phillips made a good-faith attempt to comply with the ADEA. However, this evidence appears more harmful to Phillips than helpful, because the jury could easily have concluded that printing this statement on the application but then making no effort to train hiring managers about the ADEA shows that Phillips knew what the law

required but was indifferent to whether its managers followed that law.

  For the foregoing reasons, the judgment of the district court is Affirmed.

FOOTNOTE

/* The Honorable Warren K. Urbom, United States Senior District Judge for the District of Nebraska, sitting by designation.